## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03282-SKC

EGOSCUE, INC., a California corporation,

      Plaintiff,

v.

PAIN FREE POSTURE THERAPY LLC, a Colorado limited liability company,
ANU LAWRENCE, an individual, and,
JOHN DOE 1, whose true name is unknown
JOHN DOE 2, whose true name is unknown
JOHN DOE 3, whose true name is unknown
JOHN DOE 4, whose true name is unknown
JOHN DOE 5, whose true name is unknown

      Defendants.

---

## MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM
## OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

---

{GR1298.DOCX:3}

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT  ...................................................................1

STATEMENT OF FACTS  ...............................................................3

I.   THE EGOSCUE CUSTOMER LIST CONTAINING
     APPROXIMATELY 1,600 PERSONS IS A TRADE SECRET
     UNDER COLORADO LAW SUCH THAT ITS CONTINUING
     USE BY DEFENDANTS SHOULD BE ENJOINED BY THE COURT  .......... 7

II.  DEFENDANT SHOULD BE ENJOINED FROM THE USE OF
     ALL PROPRIETARY INFORMATION AS REQUIRED BY THE
     TERMS OF THE FACILITY FRANCHISE AGREEMENT
     TERMINATED BY DEFENDANT ON SEPTEMBER 30, 2021.................... 10

III. PLAINTIFF'S EVIDENCE IN SUPPORT OF THE MOTION
     DEMONSTRATES THE LIKELIHOOD OF SUCCESS ON
     THE MERITS; A LIKELIHOOD THAT THE MOVANT WILL
     SUFFER IRREPARABLE HARM IN THE ABSENCE OF
     PRELIMINARY RELIEF; THAT THE BALANCE OF EQUITIES
     TIPS IN THE MOVANT'S FAVOR; AND THAT THE
     INJUNCTION IS IN THE PUBLIC INTEREST ........................................ 11

## TABLE OF AUTHORITIES

### CASES

*Blue Star Land Servs. LLC v. Coleman*,
2017 WL 6210902, at \*4 (W.D. Okla. Dec. 8, 2017)………………………………………….. 8

*Colorado Supply Co. v. Steward*,
797 P.2d 1303, 1306 (Colo.App.1990) …………………………………………………… 10

*Doubleclick Inc. v. Paikin*,
402 F.Supp.2d 1251, 1257 (D.Colo. 2005) …………………………...…………….. 7

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
9 F.3d 823, 847 (10th Cir. 1993) ……………………………………………………..…… 7

*Mantle Ranches, Inc. v. U.S. Park Service*,
945 F.Supp. 1449, 1452 (D. Colo.) …………………………………………………… 2

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
389 F.3d 973, 1013 (10th Cir. 2004) (McConnell J. concurring),
*aff'd and remanded*, 546 U.S. 418 (2006) …………………………………………… 2

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203, 1208 (10th Cir. 2009)
(citing *Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7, 20 (2008);
see *Little v. Jones*,
607 F.3d 1245, 1251 (10th Cir. 2010) ………………………………………………… 7

*Ultradent Prods. Inc. v. Spectrum Solutions LLC*;
2018 WL 324868, at \*2 (D.Utah Jan. 8, 2018) …………………………………………… 8

### STATUTES/RULES

D.C.COLO.LCivR 7.1(a) ……………………………………………………………… 2
Commercial Arbitration Rules of American Arbitration Association 37(d) ………….. 2
Colorado Revised Statutes [C.R.S.] 7-74-102 ……………………………………… 6
Colorado Revised Statutes [C.R.S.] 7-74-102(4) ……………………………… 5, 7, 8
Federal Rule of Civil Procedure 65(a) ……………………………………………… 2
18 U.S.C. § 1836(b)(1) ……………………………………………………………… 8
18 U.S.C. § 1839 …………………………………………………………………… 8
18 U.S.C. § 1839(3) ………………………………………………………………… 8

Plaintiff, EGOSCUE, INC., submits the following points and authorities in support of its application for a preliminary injunction.

## PRELIMINARY STATEMENT

The Complaint in this action involves multiple counts involving service mark, trademark, and trade name infringement, false designation of origin, dilution and unauthorized use of service mark, misappropriation of trade secrets, unfair competition, and the Defend Trade Secrets Act ("DTSA"). Plaintiff is seeking injunctive relief on a number of theories which involve breach of the Defendants' responsibilities under a Facility Franchise Agreement.

The Facility Franchise Agreement [Ex. B to Declaration of Meta Haley in Support of Plaintiff's Motion for Preliminary Injunction ("Haley Dec.") filed concurrently herewith], in paragraph 16.14, contains an arbitration of disputes provision in which the parties agree that any dispute arising out of or relating to the Agreement, or breach thereof, should be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules in San Diego, California; and judgment on the award entered by the Arbitrator may be entered in any Court having jurisdiction thereof.

On November 5, 2021, Plaintiff served a demand for arbitration pursuant to this paragraph of the agreement at which time the AAA assigned it Case No. 01-21-00172374. On November 29, 2021, Defendants filed an answer with affirmative defenses in the arbitration proceeding.

However, Defendants' conduct which is the basis for the action, and upon which injunctive relief is being sought, occurred in the District of Colorado which is also the district in which the individual defendant resides, conducts business, and is the location of the LLC defendant.

In order to obtain <u>enforceable</u> injunctive relief pending the results of the arbitration proceeding, Plaintiff commenced this action since the Court has jurisdiction to issue such injunctive relief notwithstanding the concurrent pendency of the San Diego arbitration proceeding.

Rule 37(d) of the Commercial Arbitration Rules of the American Arbitration Association provides that injunctive relief, which is referred to as an interim measure pursuant to the Arbitration Rules, may be sought from a judicial authority and shall not be deemed incompatible with the agreement to arbitrate or waive the right to arbitrate.

Since the Arbitrator in San Diego lacks the jurisdiction to enforce any injunctive order in the District of Colorado, this motion is required for Plaintiff to obtain the injunctive relief.

Plaintiff requests that this Court issue a preliminary injunction during the pendency of the arbitration proceeding until an arbitration award is rendered to preserve the *status quo* during the pendency of litigation.

Federal Rule of Civil Procedure 65(a), and numerous authorities in the 10th Circuit, hold that a preliminary injunction is an appropriate provisional remedy issued prior to final disposition of the litigation, and its function is to preserve the *status quo* and to prevent and to prevent irreparable loss of rights prior to judgment. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (McConnell J. concurring), *aff'd and remanded*, 546 U.S. 418 (2006); *see also Mantle Ranches, Inc. v. U.S. Park Service*, 945 F.Supp. 1449, 1452 (D. Colo.) (same).

In compliance with D.C.COLO.LCivR 7.1(a), counsel for the parties have conferred and made reasonable, good faith efforts to resolve the disputed issues. Specifically, during the course of communications between counsel, the issue of a potential preliminary injunction to be in effect during the pendency of the arbitration proceeding

was discussed, along with other issues; but counsel were unable to arrive at an agreement concerning the conditions under which the stipulated injunctive relief might issue.

## STATEMENT OF FACTS

Plaintiff, EGOSCUE, INC. is a corporation organized and existing under the laws of the State of California, with its principal office and place of business in the City of San Diego, County of San Diego, and State of California.  Defendant PAIN FREE POSTURE THERAPY LLC, is a limited liability company organized under the laws of the State of Colorado.  Defendant ANU LAWRENCE ("Defendant Lawrence"), is an individual residing in the Denver, Colorado.

Plaintiff is informed and believes and thereon alleges, Defendants have committed and will continue to commit acts of:  service mark, trademark, and trade name infringement; false designation of origin; dilution and unauthorized use of service mark; and unfair competition, as hereinafter more specifically alleged, causing actual confusion and injury to Plaintiff in the District of Colorado and elsewhere throughout the United States, through the conduct of business and sale in interstate commerce of its services under the name and service marks identified on **Exhibit A** to Declaration of Meta Haley or some derivation thereof, and by intentionally misrepresenting and deceiving customers as to Defendants' identity and relationship with Plaintiff through the use of internet, social media platforms, and other telecommunication devices used in commerce, all to the detriment of Plaintiff.

Plaintiff owns the right, title, and interest through license to a unique and successful system for the establishment and operation of exercise and anatomical function clinics dedicated to the eradication of body pain and promotion of fitness through motion, offering

such goods and services and employing such procedures, processes, and techniques that are generally described as the Egoscue Method or Egoscue System.

Plaintiff has expended significant time, effort, and resources in developing, implementing, and marketing the Egoscue Method, products and services offered under and used in connection with Egoscue Method include certain state, federal, and common law trade names, trademarks, service marks, logos, and trade dress and other intellectual property rights and which are Egoscue's sole property.

Plaintiff is in the business of licensing the operation of the Egoscue Method to others and currently has licensing arrangements with over 30 franchisees located throughout the United States.  (Haley Dec., ¶ 3)

Plaintiff is the owner of multiple service mark and trademark registrations (Haley Dec., Ex. A).  The registrations identified in Exhibit A have been renewed at various times and are all currently valid, uncontestable, subsisting, uncanceled, and unrevoked.

On April 6, 2016, Plaintiff and Defendant Lawrence entered into a Facility Franchise Agreement for the operation of an Egoscue clinic in Denver, Colorado ("Denver Agreement").  A copy of the Denver Agreement is attached as **Exhibit B** to the Declaration of Meta Haley and incorporated by reference here.

On September 30, 2021, Defendant Lawrence terminated the Denver Agreement with Plaintiff.  A copy of Defendant Lawrence termination notice is attached as **Exhibit C** to the Declaration of Meta Haley and incorporated by reference herein.

In the termination notice, Defendant Lawrence states that he will comply with the provisions of the Denver Agreement regarding closure and represents to Plaintiff that he will dispose of and/or cease using any Egoscue-branded materials or references including on social media channels.

Notwithstanding the representations in Exhibit C that Defendant Lawrence would

comply with the provisions of the Denver Agreement regarding closure, on the following day (October 1, 2021), Defendant Lawrence breached the provisions of paragraph 6.1 of the Denver Agreement and the MindBody agreement (Haley Dec., Ex. F) by using a password-protected customer list with 1,600 Egoscue customers to solicit new customers for his co-defendant competing limited liability company, Pain Free Posture Therapy LLC.

The solicitation of Egoscue customers using the proprietary customer list displayed the Egoscue Method registered mark and confirmed that Defendants would be offering the exact same service and posture therapy that they had come to expect from the Denver Egoscue clinic.   The solicitation to the 1,600 Egoscue customers in violation of the registered marks is an undeniable infringement of the service mark, trademarks, and trade name, all registered and owned by Plaintiff; and an unauthorized use of a trade secret under C.R.S. § 7-74-102(4).  A copy of Defendant's solicitation is attached as **Exhibit D** to the Declaration of Meta Haley and incorporated by reference herein.

On subsequent occasions, Defendants again used the proprietary customer list to solicit Egoscue accounts for their competing brand in the Denver area evidencing an additional pattern of conduct constituting infringement of the protected Egoscue marks.

Defendants' use of the protected marks in solicitation of new customers has caused, and is likely to continue to cause, mistake, confusion, or deception in the minds of the public and has resulted in actual confusion.  Haley Dec., ¶¶ 15, 16, 17, 18, 19, 20)

Plaintiff has never given written or oral permission or consent or license to Defendants to use the marks subsequent to termination of Defendants' Denver Agreement.

Plaintiff, through its counsel, specifically requested in writing that Defendants cease using all protected Egoscue marks or any confusingly similar variation thereof.  A copy of counsel's demand dated October 5, 2021 is attached as **Exhibit E** to the

Declaration of Meta Haley and incorporated by reference herein.

Unless restrained by the Court, Defendants' activities will inevitably continue to cause confusion, mistake, and deception and will irreparably injure and damage Plaintiff in that the trade and public will erroneously believe that the services and/or business of Plaintiff and Defendants have a common origin which is untrue as a result of the termination by Defendants of their previous franchise relationship with Plaintiff.

Plaintiff is further concerned that since Defendant Lawrence was a previous franchisee of the Egoscue Method that this will enhance his ability to continue to confuse existing and prospective customers concerning the availability of similar services by Defendants' competing brand which are no longer authorized.

Paragraph 6.1 of the Denver Agreement states that Plaintiff is the sole owner of all proprietary rights to use the Egoscue Method and Egoscue System and marks and that all material information relating the indicia revealed to Defendant Lawrence under the Denver Agreement constitutes proprietary information of Plaintiff Egoscue which were revealed in confidence, solely for the purpose of enabling the licensee to establish and operate the Egoscue clinic in Denver.

This paragraph goes on further to state that both during the term of the Denver Agreement, and for ten (10) years after the term of the Agreement, that Defendant Lawrence would not reveal any proprietary information to any other person or entity and that he would not use any such proprietary information in connection with any business or venture in which he has a direct or indirect interest.

The use of the password-protected customer list consisting of 1,600 Egoscue customers is a specific breach of this provision in the Denver Agreement and a separate MindBody agreement. (Haley Dec., ¶ 21) The customer list used to solicit 1,600 existing Egoscue customers is a trade secret pursuant to the provisions of C.R.S. § 7-74-102.

I.

**THE EGOSCUE CUSTOMER LIST CONTAINING APPROXIMATELY
1,600 PERSONS IS A TRADE SECRET UNDER COLORADO
LAW SUCH THAT ITS CONTINUING USE BY
DEFENDANTS SHOULD BE ENJOINED BY THE COURT**.

To succeed on a motion for a preliminary injunction, the moving party must show (i) a likelihood of success on the merits; (ii) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (iii) that the balance of equities tips in the movant's favor; and (iv) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008); see *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

To prevail on a claim for misappropriation of trade secrets under Colorado law, a plaintiff must show "(i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have know, that the trade secret was acquired by improper means."  *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 847 (10th Cir. 1993).

The Colorado Uniform Trade Secrets Act ("CUTSA") defines "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value."  C.R.S. § 7-74-102(4).  To constitute a trade secret, "the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."  *Id.*  (Please see Haley Dec., ¶¶ 9, 10)

Under Colorado law, "[w]hat constitutes a 'trade secret' is a question of fact for the trial court."  *Doubleclick Inc. v. Paikin*, 402 F.Supp.2d 1251, 1257 (D.Colo. 2005).

A plaintiff asserting a claim for misappropriation of trade secrets under the DTSA must establish (i) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (ii) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (iii) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means. *See* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839; *Ultradent Prods. Inc. v. Spectrum Solutions LLC*; 2018 WL 324868, at *2 (D.Utah Jan. 8, 2018); *Blue Star Land Servs. LLC v. Coleman*, 2017 WL 6210902, at *4 (W.D. Okla. Dec. 8, 2017).

The definition of a trade secret is broadly interpreted under both the CUTSA and the DTSA to include all types and forms of financial, business, technical information so long as the owner thereof has taken reasonable measures to keep such information secret and the information derives independent and economic value, actual or potential, from not being generally known to or ascertainable by another person.   18 U.S.C. § 1839(3).

The Declaration of Meta Haley, Chief Executive Officer of Plaintiff, Egoscue, Inc., demonstrates that the Plaintiff's claim has a likelihood of success on the merits of both its state and federal trade secrets claims.

C.R.S. § 7-74-102(4) defines a trade secret as follows:

> "Trade secrets" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, <u>confidential business or financial information, listing of names, addresses, or telephone numbers</u>, or other information relating to any business or profession which is secret and of value.  To be a "trade secret" the owner must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.  (Emphasis added)

The 1,600 person customer list referenced above contained financial information, names, addresses, and telephone numbers of existing Egoscue customers at the time it was misappropriated by Defendant Lawrence to solicit business for his new venture. (Haley Dec., ¶¶ 9, 10)

The customer list used by Defendant Lawrence to solicit new business was developed over a period of many years by Plaintiff and at considerable expense. (Haley Dec., ¶ 11)  In order to have access to the customer list, employees had to be provided with a password to log on to the system.  In addition to the knowledge on the part of Defendant Lawrence that the list was a trade secret, Defendant Lawrence had previously executed an agreement referred to as the MindBody Service–Franchise Participation Agreement which also specifically prohibited his use of proprietary and confidential information such as the customer list.  (See Haley Dec.)  Defendant Lawrence was required to use the password and log on to the MindBody website in order to access the information for his solicitation of the Egoscue customers for his new business.  (Haley Dec., ¶ 9)

Defendant Lawrence had reason to know that disclosure of the trade secret was not based on any express or implied consent by Plaintiff after his termination of the Agreement which constitutes misappropriation within the meaning of the statute.  At the time the customer list disclosure was done by Defendant Lawrence, he acquired it under circumstances giving rise to a duty to maintain its secrecy and limit its use, and he used improper means in misappropriating the trade secret under the CUTSA.

Plaintiff also required its employees to execute confidentiality agreements which evidence further their compliance with the requirements of the plan to protect the trade secrets confidentiality.  A copy of a Confidentiality Agreement is attached as **Exhibit G** to the Declaration of Meta Haley.

Further, EGOSCUE, INC. estimates that the amount of funds expended through advertising and marketing and in order to obtain and develop the customer list has been substantial.  (See Haley Dec., ¶ 11)

Given the above, the elements of misappropriation of the trade secret have been demonstrated, and the Court should enjoin Defendants from any further use of the customer list, or any information derived from the customer list, to develop new business.

Please see *Colorado Supply Co. v. Steward*, 797 P.2d 1303, 1306 (Colo.App.1990).

## II.

### DEFENDANT SHOULD BE ENJOINED FROM THE USE OF ALL PROPRIETARY INFORMATION AS REQUIRED BY THE TERMS OF THE FACILITY FRANCHISE AGREEMENT TERMINATED BY DEFENDANT ON SEPTEMBER 30, 2021.

Defendant Lawrence agreed in his notice of termination to comply with the terms of the Denver Agreement (Haley Dec., Ex. B), but he has not done so in all respects. Paragraph 6.1 of the Denver Agreement establishes that the Egoscue System and marks ("indicia") are the exclusive property of Plaintiff and that licensee shall not either during or after the term of the agreement utilize any of Egoscue's indicia or any indicia confusingly similar thereto, except in accordance with the terms of the agreement.

In paragraph 6.1 of the Denver Agreement, the licensee (Defendant Lawrence at the time) acknowledged that the indicia in its entirety constitutes proprietary information of Egoscue and that they are revealed to licensee in confidence, solely for the purpose of enabling licensee to establish and operate the Egoscue facility licensed in the agreement.

Paragraph 6.1 goes on to state that the licensee agreed that both during the term and for ten years after the term of the agreement the licensee would not reveal any proprietary information to any other person or entity and would not use any of such

proprietary information in connection with any business or venture in which he has a direct or indirect interest.

Paragraph 6.1 also does not prohibit the licensee from engaging or participating in any lawful trade or business either during or after the term of the agreement whether or not competitive with Egoscue or its licensees provided the licensee does not reveal, use, or appropriate in connection therewith any of the proprietary rights, confidential information or trade secrets referred to in this section and does not violate any other provisions of the agreement.

The post-termination conduct of Defendants as set forth in the Declaration of Meta Haley demonstrate that Defendants have breached the provisions in paragraph 6.1 of the Denver Agreement.

### III.

**PLAINTIFF'S EVIDENCE IN SUPPORT OF THE MOTION DEMONSTRATES THE LIKELIHOOD OF SUCCESS ON THE MERITS; A LIKELIHOOD THAT THE MOVANT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF; THAT THE BALANCE OF EQUITIES TIPS IN THE MOVANT'S FAVOR; AND THAT THE INJUNCTION IS IN THE PUBLIC INTEREST**

The Declaration of Meta Haley, CEO of Plaintiff, Egoscue, Inc., combined with the exhibits attached to her Declaration and incorporated by reference, satisfy the principal test for issuance of a preliminary injunction.

Defendant Lawrence, at the time he terminated his franchise relationship with Plaintiff, knew that the password-protected customer list was proprietary information and constituted a trade secret of Plaintiff. The sequence of events surrounding Defendant Lawrence's decision to terminate the relationship with Egoscue, Inc. in which he logged into the MindBody database to obtain the customer list and then the following day tendered his notice of termination demonstrates an awareness of wrongdoing and that

the potential utilization of the customer list was improper.  (Haley Dec., ¶¶ 5, 6, 7, 8, 9, 10)

It is obvious that Defendant Lawrence's motive was to avoid the risk of being required to compete against Plaintiff through the development of new clients, and he understood the risk associated with attempting to generate new business without accessing the customer list that he was familiar with.

This conduct constitutes misappropriation of the trade secret customer list and demonstrates irreparable injury to Plaintiff if Defendant Lawrence was permitted to use the customer list and proprietary information while the arbitration in San Diego is pending.

Plaintiff, Egoscue, Inc., has every reason to expect that its employees and franchisees will follow the company policy in protecting trade secrets; and the Defendants do not have any legitimate interest in using improperly-acquired confidential information to launch their new business.

Public policy supports the protection of trade secrets, and there is no legitimate public interest in the Defendants using confidential information to unfairly compete with Plaintiff which constitutes irreparable harm.

Therefore, based on the evidentiary showing of Plaintiff in the Declaration of Meta Haley, a reasonable interpretation of the Facility Franchise Agreement, and an evaluation

of the conduct of Defendants, Plaintiff requests that this Court issue its preliminary injunction in the form of the proposed order filed concurrently with this motion.

Dated:  February 16, 2022                    Respectfully submitted,

                                             *s/ R. Keith McKellogg*
                                             R. Keith McKellogg, Esq.
                                             Circuit, McKellogg, Kinney & Ross LLP
                                             7979 Ivanhoe Avenue, Suite 200
                                             La Jolla, CA 92037
                                             Telephone: (858) 459-0581, Ext. 114
                                             E-mail: kmckellogg@cmkr.com
                                             Attorneys for Plaintiff, Egoscue, Inc.