## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03282-SKC

EGOSCUE, INC., a California corporation,

    Plaintiff,

v.

PAIN FREE POSTURE THERAPY LLC, a Colorado limited liability company,
ANU LAWRENCE, an individual, and,
JOHN DOE 1, whose true name is unknown
JOHN DOE 2, whose true name is unknown
JOHN DOE 3, whose true name is unknown
JOHN DOE 4, whose true name is unknown
JOHN DOE 5, whose true name is unknown

    Defendants.

---

## DECLARATION OF META HALEY IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

I, Meta Haley, do declare and say as follows:

1. I am a competent adult over the age of 18. All statements made herein are of my personal knowledge. If called upon to do so, I would testify as follows:

2. I am the chief executive officer of Plaintiff, Egoscue, Inc.

3. Attached to this Declaration as **Exhibit A** is a list of the registered service marks and trademarks of Plaintiff, Egoscue, Inc., which have been renewed at various times, and they are all currently valid, uncontestable, subsisting, uncanceled, and unrevoked. Plaintiff is in the business of licensing the operation of the Egoscue Method

to others and currently has licensing arrangements with over thirty (30) franchisees located throughout the United States.

4. On April 6, 2016, Plaintiff and Defendant, Anu Lawrence, entered into a Facility Franchise Agreement for the operation of an Egoscue clinic in Denver, Colorado ("Denver Agreement"). A copy of the Denver Agreement is attached hereto as **Exhibit B** and incorporated by reference herein.

5. On September 30, 2021, Defendant Lawrence terminated the Denver Agreement with Plaintiff. A copy of Defendant Lawrence's termination notice is attached hereto as **Exhibit C** and incorporated by reference herein.

6. On October 1, 2021, Defendant Lawrence breached the provisions of paragraph 6.1 of the Denver Agreement by using a password-protected customer list with 1,600 Egoscue customers to solicit new customers for his co-defendant and competing limited liability company, Pain Free Posture Therapy LLC.

7. The solicitation of Egoscue customers using this proprietary customer list displayed the Egoscue Method registered mark and confirmed the Defendants would be offering the exact same service and posture therapy the customers had come to expect from the Denver Egoscue clinic. The solicitation to the 1,600 Egoscue customers in violation of registered marks is an undeniable infringement of the service mark, trademarks, and trade name all registered and owned by Plaintiff. A copy of Defendants' solicitation is attached hereto as **Exhibit D** and incorporated by reference herein. Also, Defendants continue to use social media sites built with the Egoscue name and protected mark and have since rebranded.

8. On October 5, 2021, counsel for Egoscue, Inc. requested in writing that Defendants cease using all protected Egoscue marks or any confusingly similar variation thereof. Despite this written notice, Defendant Lawrence has continued to use the customer list to solicit business for his new, competing LLC. To date, Defendants continue to confuse customers by offering identical services without making it clear they are no longer receiving the same therapy. A copy of counsel's demand dated October 5, 2021 is attached hereto as **Exhibit E** and incorporated by reference herein.

9. Defendant Lawrence electronically executed a MindBody Service – Franchise Participation Agreement on July 2, 2021 ("MindBody agreement"). A copy of the MindBody agreement is attached as **Exhibit F** and incorporated by reference herein. The MindBody agreement specifically prohibited Defendant Lawrence's use of confidential information including information related to names, business opportunities, which had been designated by the disclosing party as confidential or proprietary. (Ex. F, Pg. 5, Article IV, Confidential Information.) Further, Defendant Lawrence agreed to the use of electronic signatures in order to enter into the MindBody agreement, and the electronic delivery of notices, policies, and records of transactions through MindBody Services (Ex. F, Pg. 8, Article IX, Miscellaneous). The MindBody system contained information about the Egoscue customers' purchase history, appointment history, pain complaints, and other feedback, which is critical to the development of further business with the customers on the list.

10. Employees of Egoscue, Inc. are required to sign a confidentiality agreement which also specifically prohibits the disclosure to third parties of information regarding

existing customers.  A copy of the Confidentiality Agreement, which employees are required to execute, is attached hereto as **Exhibit G** and incorporated by reference herein.  The Egoscue Employee Handbook, at page 22, contains the following:

> <u>On the Job</u>.
> Our professional ethics require that each employee maintain the highest degree of confidentiality when handling confidential matters. To maintain this professional confidence, no employee shall disclose private information to other individuals, friends, or members of one's own family. Questions concerning client confidentiality may be addressed with your supervisor.

Therefore, each employee of Egoscue, Inc. understood the responsibility not to provide confidential information about any clients to other individuals, friends, or members of one's own family.  Under this section, the Egoscue Employee Handbook also states that Egoscue employees must respect the confidence in which they are entrusted with private files and handle them care.  Additionally, Egoscue employees, under no circumstances, were permitted to honor outside requests for private material; and such requests could not be filled unless prior written permission is received from the individual.  Egoscue also took additional steps to ensure that franchisees following these critical confidential procedures including a copy of our non-disclosure agreement at the time the franchise was initiated with all their employees.

11. Plaintiff invests hundreds of thousands of dollars yearly in marketing efforts, particularly around events and shares those leads with its franchisees.  In addition, franchisees receive leads from Egoscue.com website traffic and build social media networks/advertising in their local communities using Egoscue trademarks.  The goodwill

associated with the marks belong entirely to Egoscue and it was built with substantial effort and financial investment.

12. Defendant Lawrence relied on the customer list provided at the time he began his tenure as the franchisee for the Denver clinic.  He acquired an existing customer list, and it was expanded during his operation of the franchise through the expenditure of funds by the franchisor/Plaintiff, Egoscue, Inc.

13. Many of the relationships between Egoscue and its clients are multi-year relationships which are dependent on continuing contact with these clients.

14. Egoscue's ability to maintain its existing customer base has been significantly impaired by the manner in which Defendant Lawrence has solicited the business opportunities from the customer list.

15. A number of clients have contacted Egoscue management and were confused about whether they would, in fact, be receiving the same treatment.  This confusion was magnified by the fact that Defendant Lawrence had once been a trusted franchisee; and many of the clients on the customer list, when solicited by him, did not understand that they would not, in fact, be receiving the same treatment they had previously been given as Egoscue clients.

16. This major breach of trust and use of the trade secret customer list has caused irreparable injury to Egoscue operations in Denver.

17. I have received various communications from persons on the customer list, who were solicited by Defendant Lawrence, who are confused at what has occurred and are not satisfied with the therapy opportunities they are being provided with.  Defendant

Lawrence went so far as to deny refunds to customers who wanted to continue receiving Egoscue therapy and who requested refunds.

18.     The fact that the solicitation of these existing customers (Ex. D) had the Egoscue logo on the document added to the confusion as to whether they would remain Egoscue clients or clients of Defendant Lawrence and his newly-formed LLC.

19.     The information on the customer list is not known to third parties outside the business.  The information is not easily ascertainable from any sort of public records, internet searches, or otherwise, but is rather developed exclusively from an intake form which customers complete at the time they become customers of Egoscue, Inc. and is then periodically updated during the course of their relationship with Egoscue, Inc.

20.     Having access to the customer list affects substantial savings for Plaintiff in that they are not required to exclusively engage in marketing efforts for new customers and can rely on existing base of customers for continuing future operations.

21.     This customer list, therefore, is a substantial asset in the operation of Plaintiff's business against competing businesses of a similar type.  This is made even more evident by the actions that Defendant Lawrence took the day prior to termination to download this proprietary information from the MindBody agreement.  The value of the list is further confirmed by the fact that he actively solicited business from the customer list.

22. If Plaintiff were required to start from scratch and develop the 1,600 customer list, it would take substantial sums of money as well as years to acquire and duplicate the information.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated:  February 17, 2022			Respectfully submitted,

*s/Meta Haley*
Meta Haley
Declarant and CEO of Egoscue, Inc.