# EXHIBIT B

{}

## EGOSCUE FACILITY FRANCHISE AGREEMENT

THIS EGOSCUE FACILITY FRANCHISE AGREEMENT ("Agreement") is made and entered into as of this 6th day of April _____, 20___ ("Effective Date"), by and between Egoscue, Inc., a California corporation with its principal place of business located at 12230 El Camino Real, Suite #130, San Diego, California, 92130 ("Egoscue" or "Company") and Thu Lawrence _____ ("Licensee") with its principal place of business located at 1660 S. Albion St. #107 _____, and with reference to the following:
80022

### RECITALS

A.    Egoscue owns the right title and interest, through license, to a unique and successful system for the establishment and operation of exercise and anatomical function clinics ("Clinic") dedicated to the eradication of body pain and promotion of fitness through motion, offering such goods and services and employing such procedures, processes and techniques as are summarized on Exhibit A attached hereto ("Egoscue System"), all of which are subject to periodic revision and improvement;

B.    Egoscue is in the business of operating a Company-owned Clinic in California that offers and provides the Egoscue System to Egoscue's clientele via either a face-to-face in person, and/or web-based format. The Company owned Egoscue University in California also serves as the location for training and certifying others in the Egoscue System;

C.    Egoscue has expended significant time, effort and resources in developing, implementing and marketing the Egoscue System, products, and services offered under and used in connection with the Egoscue System, including certain state, federal and common law trade names, trademarks, service marks, logos and trade dress and other intellectual property rights ("Marks") as are set forth in detail on Exhibit B attached hereto and as amended from time to time, all of which Marks are or will be the Company's sole property;

D.    Egoscue is also in the business of licensing the operation of the Egoscue System to others;

{GS9323.DOC:}

1

E.      Licensee has made written application to Egoscue for license, attached hereto as Exhibit C, and having had the opportunity to investigate, to Licensee's satisfaction, the Clinic, Marks, and Egoscue System, together with the competitive market in which they operate, now desires to license from Egoscue, the right to operate the Egoscue System as set forth hereinafter and in strict accordance with the terms and conditions contained in this Agreement.

F.      Licensee acknowledges that the operation of each Clinic, and the integrity and viability of the Egoscue System is dependent upon each of the other licensees of the Egoscue System to establish and maintain the goodwill necessary for a successful operation of the Egoscue System, and that the preservation of the integrity of the Egoscue System, Clinic, and Marks may be had only through Licensee's strict adherence to the uniform standards, procedures and policies as hereinafter described.

NOW THEREFORE, in consideration of the promises, covenants, representations and warranties hereinafter set forth, and other good and valuable consideration, the parties agree as follows:

1.      Recitals.      The recitals set forth above are true and correct in all material respects and are incorporated hereinto this Agreement.

2.      Grant of License.      Subject to the terms and conditions contained herein, Egoscue hereby grants to Licensee, a limited, non-exclusive, and nontransferable (except in accordance with the specific terms set forth in this Agreement) right and license to:

2.1      Establish and utilize the Egoscue System solely through operation of an Egoscue clinic ("Egoscue Facility"), solely at the location(s) set forth in Exhibit D attached hereto;

2.2      Establish and utilize the Egoscue System solely through operation of an Egoscue Facility, at additional location(s) not set forth in Exhibit D attached hereto, provided that Licensee enter into a separate Egoscue Franchise License Agreement for each such additional location.

2.3      Use, in connection with the operation of the Egoscue Facility, the Marks;

{GS9323.DOC:}

2

2.4     Purchase, from Egoscue or its approved designees, and use those certain products and services set forth in Exhibit E, attached hereto, and to sell and/or install said products in or from the Egoscue Facility.  Licensee shall not offer or sell any service or product not listed on Exhibit E, Exhibit F, or Exhibit I without the prior written consent of Egoscue;

2.5     Perform and offer to the public, at the Egoscue Facility, the Egoscue System;

2.6     Issue and honor the guarantees extended by Egoscue with reference to the Marks and Egoscue System or as may be otherwise extended by Egoscue from time to time during the Term (as defined herein); and

2.7     Use the Egoscue URL address www.egoscue.com ("Web Site"), for the benefit of Licensee's clients.  Upon request, Egoscue shall update the Web Site to mention and include contact information for Licensee's Egoscue Facility.  Licensee shall not be permitted during the Term to establish or maintain or otherwise utilize any website, blog, social media site, domain name or any other internet or electronic based forum, regardless of whether the use is for informational purposes only or for purposes of marketing, advertising, or otherwise promoting Licensee's Egoscue Facility, Egoscue products, Egoscue services, Egoscue methods, Egoscue trademarks or anything Egoscue related, other than the Web Site, without the prior express written approval of Egoscue.

The right and license granted herein shall be non-exclusive.  Without intending to limit the foregoing, specifically, Egoscue shall at all times during the Term, have the right either to establish and operate as Company-owned facilities, or to license any other party or parties, whether or not affiliated in any way with Egoscue, to establish and operate an Egoscue Facility using the Marks and/or the Egoscue System at any other location or locations whatsoever.  By accepting the rights and license granted herein, Licensee: a) acknowledges and accepts Egoscue's legal right to issue such license; b) agrees that it will not oppose intervention by Egoscue in any proceeding affecting the enforcement of its rights under this Agreement; c) accepts and agrees to each and every provision contained herein; and d) agrees that the rights to use and operate the Egoscue System and Egoscue Facility were granted pursuant to processes

{GS9323.DOC:}

3

and procedures consistent with applicable law, and agrees that it will not raise any claim or defense to the contrary.

3.   Term of License.   The term ("Term") of this Agreement and of the rights and license granted herein shall commence on the Effective Date, and shall continue for five (5) years, unless sooner terminated or extended in accordance with the terms and provisions of this Agreement.

4.   Equipment Requirement and Initial Fees.

4.1   Equipment Requirement.   On or before the Effective Date, Licensee shall have obtained the minimal necessary equipment and accessories, including without limitation uniforms, computer software, hardware and related peripherals ("Equipment") that Licensee must have in order to implement the Egoscue System and operate the Egoscue Facility. The Equipment is described in detail in Exhibit F attached hereto, and is subject to reasonable revision by Egoscue from time to time. Licensee shall not operate the Egoscue Facility without the Equipment, which Equipment must at all times be kept in good operating condition.

4.2   Initial Up Front License Fee.   On or before the Effective Date, Licensee shall pay to Egoscue the sum of Five Thousand Dollars ($5,000) as an initial fee for the right and license hereby granted ("Up Front Fee"). The Up Front Fee shall be in addition to the periodic royalty payments payable to Egoscue as set forth hereinafter below, for its services in relation to the location and development of the Egoscue Facility, or for any other reason which may be owed to Egoscue from time to time. The Up Front Fee shall be deemed fully earned by the Company upon the execution and delivery of this Agreement, except in the event that this Agreement is terminated by either party or in any manner in accordance with the terms hereof, effective on any date within six (6) months from the date of this Agreement, in which event the Up Front Fee shall be refunded to Licensee to the extent of One Thousand Dollars ($1,000) only, without interest. Except as expressly provided for herein, the Up Front Fee (nor any other fee provided for herein) shall not be refunded or refundable, in whole or in part, upon any termination of this Agreement nor at any other time or under any other circumstances whatsoever.

{GS9323.DOC:}

4

4.2.1   Multiple Locations.   For each additional Egoscue Facility, Licensee shall pay to Egoscue an Up Front Fee of Seven Thousand Five Hundred Dollars ($7,500) as an initial fee for the right and license hereby granted.

4.3   Training Fees.   The following separate fees (per person trained), payable to Egoscue University as incurred, without consideration as to travel, lodging and per diem costs which costs shall be at the sole and absolute expense of Licensee, to meet training requirements set forth in this Agreement are as follows in Sections 4.3.1 through 4.3.4 below.

| | | |
|---|---|---|
| 4.3.1 | Postural Alignment Specialist ("PAS") Certification: | $ 2,500 |
| 4.3.2 | Advanced Exercise Therapist ("AET") Certification: | $ 3,450 |
| 4.3.3 | Therapy Skills ("TS") Certification: | $ 3,000 |
| 4.3.4 | License Operations ("LO") Certification: | $ 5,000 |
| | Total (not including travel costs): | $13,950 |

5.   Use of the Egoscue Facility Name   Licensee agrees not to interfere in any manner with or attempt to prohibit the use of the Marks by any other licensee of Egoscue in any other area.   Licensee further agrees to execute any and all other necessary papers, documents, and assurances to effectuate this purpose and agrees to cooperate fully with Egoscue or any licensee of Egoscue in securing all necessary and required authority from any secretary of state, licensing authority, or other governmental authority to use the name of the Egoscue Facility, Egoscue System or Marks.

6.   Validity and Use of Marks   Licensee acknowledges that the Egoscue System and Marks ("Indicia") are the exclusive property of Egoscue.  Licensee shall not, either during or after the Term of this Agreement, utilize any of Egoscue's Indicia, or any indicia confusingly similar thereto, except in accordance with the terms of this Agreement.

6.1   Licensee hereby acknowledges that Egoscue and its licensors, as such may exist from time to time, shall be the sole owners of all proprietary rights in and to the Indicia and all material and information relating to the Indicia now or hereafter revealed to Licensee under this Agreement. Licensee further acknowledges that the Indicia, in its entirety, constitutes trade secrets of Egoscue and that they are revealed to Licensee in confidence, solely for the purpose of enabling Licensee to establish and operate the Egoscue Facility licensed herein in accordance

{GS9323.DOC:}

with the terms of this Agreement. Such trade secrets include, but are not limited to processes, essential equipment and accessories, systems, product catalogues, price lists, training manuals, exercises, operating manuals, policy manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins, and inventory systems, including without limitation The Egoscue Licensed Clinic Manual as such may be modified from time to time ("Manual"), attached hereto as Exhibit I, (collectively referred to herein as "Proprietary Information"). Licensee hereby agrees that both during the Term and for ten (10) years after the Term of this Agreement, Licensee will not reveal any Proprietary Information to any other person or entity and that Licensee will not use any of such Proprietary Information in connection with any business or venture in which he has a direct or indirect interest, whether as a proprietor, partner, joint venturer, shareholder, officer, director, or in any other capacity whatsoever, other than in connection with the operation of the Egoscue Facility licensed herein. Nothing contained in this Section shall be deemed to prohibit Licensee from engaging or participating in any lawful trade or business, either during or after the Term of this Agreement, whether or not competitive with Egoscue or its Licensees, provided that Licensee does not reveal, use, or appropriate in connection therewith any of the proprietary rights, confidential information, or trade secrets referred to in this Section and does not violate any other provision of this Agreement.

7.    Use of the Egoscue Name    Licensee shall operate, advertise, and promote the Egoscue System and Egoscue Facility under the designation " Egoscue" ("Name"), without the addition of any prefix, suffix, or any other name or names, or under any other name or names without Egoscue's written consent. Licensee shall not use the Name or any other of the Marks in or as part of Licensee's firm or corporate name.

8.    Goodwill    Licensee acknowledges that all goodwill which may arise from Licensee's use of Egoscue's Indicia, is and shall at all times remain the sole and exclusive property of Egoscue and shall inure to the sole benefit of Egoscue. Nothing contained in the preceding sentence shall be construed to prohibit Licensee from receiving, for a sale of the Egoscue Facility made in compliance with the provisions of this Agreement, a price which includes payment for any goodwill belonging to Licensee.

9.    Unauthorized Use    Licensee  shall  promptly  report  to  Egoscue  any unauthorized use of Egoscue's Indicia that comes to Licensee's attention in any manner

{GS9323.DOC:}

whatsoever. If requested by Egoscue, Licensee will cooperate with Egoscue in precluding unauthorized use of Egoscue's Indicia, or any confusingly similar mark or indicia, such assistance and cooperation to be at the sole expense of Egoscue.

10.  <u>Services to be Rendered</u>   In addition to any assistance which Egoscue may provide with respect to equipment selection and installation, Egoscue and Licensee agree that Egoscue will perform the following continuing services for the benefit of Licensee during the Term of the Agreement:

10.1  Prior to the opening of the Egoscue Facility, Egoscue staff shall provide initial training as follows: a) postural alignment specialist training ("PAS"); b) advanced exercise therapist training ("AET"); c) therapy skills training ("TS"); and (d) license operations training ("LO") ("Initial Training") in all aspects of the Egoscue System. The Initial Training shall be at Licensee's sole cost and expense and shall be attended by Licensee and such of its personnel as Egoscue may reasonably designate. It is an express term of this Agreement that Licensee and such employees or agents of Licensee as Egoscue may reasonably designate, meet and maintain certain "Minimum Training Requirements", at Licensee's sole cost and expense, at all times during the Term of this Agreement. The Minimum Training Requirements and Initial Training components are set forth on <u>Exhibit G</u> attached hereto. The Minimum Training Requirements are subject to change from time to time by Egoscue, where in its reasonable determination, such changes are appropriate. All expenses of travel, lodging, meals, and other living expenses, incurred by Licensee and/or such employees in attending such Initial Training or in meeting and maintaining the Minimum Training Requirements shall be borne and paid by Licensee. Notwithstanding anything to the contrary foregoing, it shall be an express requirement of this Agreement that: (i) each therapist employee of Licensee complete PAS certification within one (1) year of such employee's hiring by Licensee; and (ii) Licensee, prior to the date on which Licensee opens the Egoscue Facility licensed by this Agreement and during the Term, have at least one (1) therapist on staff, who shall have received PAS certification from Egoscue, all at the sole cost and expense of Licensee.

10.2  Egoscue agrees to make available to Licensee from time to time all improvements and additions to the Egoscue System, and additional Marks as they become available and are implemented by Egoscue;

{GS9323.DOC:}

10.3   Egoscue agrees to counsel and assist Licensee on a continuing basis with respect to the general management and operation of the Egoscue Facility, and will make available to Licensee the benefits of Egoscue's information, experience, advice, guidance, and know-how in connection therewith;

10.4   Egoscue may, in its sole discretion, purchase and place from time to time, advertising promoting Egoscue and its Licensee's Egoscue Facilities, and the products and services sold by them. Subject to the provisions hereinafter set forth, all decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and regarding selection of the particular medium and advertising content, shall be within the sole discretion of Egoscue and such agencies or others as it may appoint.   Licensee agrees that it will purchase and place advertising in accordance with and as set forth in Exhibit H, attached hereto and incorporated herein.  Nothing herein shall be deemed to prohibit Licensee from engaging in any other additional advertising or promotion of the Egoscue Facility provided such advertising or promotion shall be at the sole cost of Licensee, without deduction or credit against royalties or other amounts owed by Licensee to Egoscue, and shall be subject to the provisions of Section 11.8 below.

10.5   Egoscue agrees to sell to Licensee, during the Term of this Agreement and subject to the terms herein after set forth, such quantities of those products ("Products") set forth in Exhibit I attached hereto, as Licensee may order from to time.

10.5.1   Notwithstanding the foregoing Section 10.5, Egoscue may at any time and from time to time, in its sole discretion, discontinue the sale to all its Licensees of any Product or Products, if, in the opinion of Egoscue, the continued sale of such Product or Products becomes unfeasible, unprofitable, or otherwise undesirable, and upon such discontinuation the license herein granted with respect to such Product or Products shall terminate unless Egoscue has provided for alternative sources of supply meeting its standards and specifications and expressly elects to continue such license subject to such standards and specifications.

10.5.2   The prices, delivery terms, terms of payment, and other terms relating to the sale of such Products by Egoscue shall be subject to change by Egoscue without prior notice at any time. Egoscue shall in no event be liable to Licensee for unavailability of or

{GS9323.DOC:}

8

delay in shipment or receipt of merchandise due to temporary product shortages or unavailabilities, order backlogs, production difficulties, delays in or unavailability of transportation, fire, strikes, work stoppages, or other causes beyond the reasonable control of Egoscue.

11.    <u>Licensee Covenants</u>

11.1   Licensee covenants to obtain and wear, and have its employees and/or independent contractors wear, the approved uniform of the Egoscue Facility, as such may exist from time to time during the Term.

11.2   Licensee hereby agrees that it will at all times actively promote the Egoscue System, its services and products, and will use its best efforts to cultivate, develop, and expand the market therefor.

11.3   Licensee acknowledges that a large public demand has been created and exists for services utilizing the Marks, and that members of the public have come to expect that they will be able to obtain such services at an established facility such as the Egoscue Facility. The services available at an Egoscue Facility shall be consistent and in keeping with the standards and therapy procedures set forth in the Manual (<u>Exhibit K</u>), and Licensee shall observe and adhere to the requirements, policies and procedures contained in the Manual, as such may exist from time to time during the Term.

11.4   Subject to the provisions of this Section and Section 11.18 herein, it is agreed that at all times during the Term the Authorized Representatives (as defined herein):

11.4.1   shall devote their respective full time and effort to the active management and operation of the Egoscue Facility;

11.4.2   shall, irrespective of any delegation of authority not inconsistent with Section 11.4.1, reserve and exercise ultimate authority and responsibility with respect to the management and operation of the Egoscue Facility; and

11.4.3   shall represent and act on behalf of Licensee in all dealings with Egoscue.

{GS9323.DOC:}

9

If two or more individuals are named herein, each of them shall fulfill the requirements of Section 11.4.1, and both or all of them shall jointly fulfill the requirements of Sections 11.4.2 & 11.4.3. For purposes of this Agreement those individuals identified on Exhibit J attached hereto, as amended from time to time, shall be the Authorized Representatives. The parties agree that it is a material term of this Agreement that there shall be at least one Authorized Representative at all times during the Term. Any Authorized Representative shall meet and maintain the Minimum Training Requirements.

11.5    Licensee acknowledges that the design and appearance of both the exterior and interior of the Egoscue Facility building are part of Egoscue's Indicia, subject to modification of such Indicia from time to time by Egoscue, and that it is essential to the integrity of said Indicia that as great a degree of uniformity as possible be maintained among the various Facility premises of Egoscue's licensees. Accordingly, Licensee agrees that:

11.5.1   The Egoscue Facility site location shall be approved in writing by Egoscue, such consent not to be unreasonably withheld;

11.5.2   Licensee will make no change, addition, or alteration of any kind to the structural elements of the Egoscue Facility site location or to the adjacent areas, without the prior written consent of Egoscue;

11.5.3   Licensee will at its sole expense maintain interior and exterior painting and decor in such manner and form as may be reasonably prescribed from time to time by Egoscue;

11.5.4   Licensee will follow the reasonable instructions of Egoscue with respect to floor layout and character of interior furnishings; and

11.5.5   Licensee will purchase and display, on and about the interior and exterior of the Egoscue Facility, such and only such signs, emblems, logos, lettering, and pictorial  materials ("Logos") as may be reasonably approved by Egoscue from time to time. The parties agree that as to this Section 11.5.5, Egoscue's failure to object in writing to any request for  display of Logos within thirty (30) days upon postmark of such request, actually received by Egoscue, shall constitute an approval of said request.

{GS9323.DOC:}

11.6   Licensee hereby agrees that it will at all times maintain the Egoscue Facility premises in a clean, wholesome, attractive, and safe condition, and will keep the same in a good state of maintenance and repair;

11.7   Licensee hereby agrees that it will at all times give prompt, courteous, and efficient service to the public; will perform work competently and in a workmanlike manner; and in all business dealings with members of the public will be governed by the highest standards of honesty, integrity, fair dealing, and ethical conduct. Licensee will do nothing which would tend to discredit, dishonor, reflect adversely upon, or in any manner injure the reputation of Egoscue, Licensee, or any other Licensee of Egoscue.

11.8   Licensee will not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has first been approved in writing by Egoscue. In the event that Egoscue from time to time furnishes to Licensee any advertising, promotional, or informational materials to be used, displayed, or distributed in or about the Egoscue Facility, Licensee agrees to follow the instructions of Egoscue in connection therewith.

11.9   Licensee alone shall be responsible for all loss or damage arising out of or relating to the operation of the Egoscue Facility or arising out of the acts or omissions of Licensee or any of his agents, servants, or contractors in connection with the sale of products or rendering of services by Licensee, and for all claims for damage to property or for injury or death of any persons directly or indirectly resulting there from, and Licensee agrees to indemnify and hold Egoscue harmless against and from any and all such claims, loss, and damage, including costs and reasonable attorney's fees. Licensee shall obtain and at all times during the Term of this Agreement maintain in force and pay the premiums for public liability or other similar liability insurance, in either case with complete operations coverage, with companies reasonbly acceptable to Egoscue, with limits of liability of not less than $1,000,000 for each occurrence and $3,000,000 in the aggregate.  Such limits of liability shall be increased, and modified or additional types of coverage shall be obtained at the direction of Egoscue, as and when changed circumstances reasonably so require. Licensee shall name Egoscue as an additional insured on such policies.  Licensee shall furnish to Egoscue a certified copy or certificate with respect to each such policy, evidencing coverage as set forth above, naming Egoscue as an additional

{GS9323.DOC:}

11

insured, and providing that such policy shall not be cancelled, amended, or modified except upon ten (10) days' prior written notice to Egoscue. Maintenance of the insurance required under this Section shall not relieve Licensee of the obligations of indemnification contained in the first sentence of this Section. If Licensee fails to procure or maintain in force any insurance as required by this Section or to furnish the certified copies or certificates thereof required hereunder, Egoscue may, in addition to all other remedies it may have, procure such insurance and/or certified copies or certificates, and Licensee shall promptly reimburse Egoscue for all premiums and other costs incurred in connection therewith.

11.10 In addition to the reports elsewhere required of Licensee herein this Agreement, Licensee shall submit to Egoscue, within ninety (90) days after the end of each fiscal year of Licensee, complete financial statements in form reasonably prescribed by Egoscue, including balance sheet, profit and loss statement, and cash flow statement. In addition, Licensee shall submit to Egoscue such other reports and financial information as Egoscue may from time to time require, including by way of example and not limitation, sales and cost data and analyses, advertising budget and expenditures.

11.11 Licensee will pay all invoices rendered by Egoscue for Products, merchandise or other items sold to Licensee in strict accordance with the payment and credit terms applicable thereto from time to time. Any such amount not so paid when due, as well as any amount due from Licensee pursuant to Section 11.9 above, shall be subject to a late penalty of One and One-Half percent (1½%) of the late amount for each month in which such late amount remains outstanding. Licensee will further pay when due all bills and other amounts owed to third parties under any purchasing arrangement in which Egoscue may be involved, but Egoscue shall not by virtue hereof become liable to any such third party.

11.12 Licensee shall comply with all federal, state, county, municipal, or other statutes, laws, ordinances, regulations, rules, or orders, including but not limited to licensure requirements, of any governmental or quasigovernmental entity, body, agency, commission, board, or official applicable to the Egoscue Facility or the operation of the Egoscue System and use of the Marks. Nothing herein shall prevent Licensee from engaging in a bona fide contest of the validity or applicability thereof in any manner permitted by law.

{GS9323.DOC:}

12

11.13  This Agreement does not in any way create, and should not be interpreted to create, the relationship of principal and agent between Egoscue and Licensee, and in no circumstances shall Licensee be considered an agent, joint venturer, partner or employee of Egoscue. Licensee shall not act or attempt to act, or represent himself, directly, or by implication, as an agent of Egoscue or in any manner assume or create or attempt to assume or create any obligation on behalf of or in the name of Egoscue nor shall Licensee act or represent himself as an affiliate of any other authorized licensee of Egoscue.  Licensee shall not, by virtue of this Agreement or the relationship created thereby, be entitled nor look to Egoscue to provide any benefits of employment to Licensee.

11.14  Licensee shall at all times comply with all lawful and reasonable policies, regulations, and procedures promulgated or prescribed from time to time by Egoscue in connection with the Egoscue Facility, including but not limited to standards, techniques, requirements, certifications and procedures in the rendering of services, the providing of sales and advertising, the offering of promotional techniques, programs, and procedures, and the keeping of maintenance and appearance of the Egoscue Facility and premises, payment, credit, and accounting, and financial reporting policies and procedures.

11.15  Egoscue, through its authorized representatives and at Egoscue's sole cost and expense, shall have the right at all reasonable times, to visit the Egoscue Facility for the purpose of inspecting the merchandise and equipment on hand, inspecting the nature and quality of goods sold and services rendered, examining and auditing Licensee's books and records, observing the manner and method of operating the Egoscue Facility, and evaluating the Egoscue Facility for the potential suitability for future regional Egoscue trainings and seminars. If any of Licensee's books, records, or inventory is located outside the Egoscue Facility premises, Egoscue shall have similar rights with regard to the same.

11.16  During the Term, Licensee shall use, implement, and adhere to, and shall not materially deviate from the Manual as modified by Egoscue from time to time.

11.17  Notwithstanding anything to the contrary contained herein, the following shall be express covenants of Licensee; (i) Licensee shall operate the Egoscue Facility in a manner such that the Egoscue Facility is open for business and adequately staffed to see clients

{GS9323.DOC:}

on a full-time basis, actual operating hours to be reasonably established by Licensee, at least five (5) days per week unless otherwise approved in writing by Egoscue ("Regular Operating Hours"); and (ii) during Regular Operating Hours, the Egoscue Facility shall at all times be staffed by at least one (1) therapist holding a PAS certification from Egoscue.

12.    Royalties

12.1    Licensee agrees to pay to Egoscue, on the last day of each month of the Term and Renewal Term of this Agreement, a royalty payment in the monthly flat fee as follows ("Monthly Royalty Payment"):

Term:

| Year 1: | $1,500 |
| Year 2: | $2,000 |
| Year 3: | $2,500 |
| Year 4: | $2,500 |
| Year 5: | $2,500 |

Renewal Term:

| Year 6: | $2,750 |
| Year 7: | $2,750 |
| Year 8: | $3,000 |
| Year 9: | $3,000 |
| Year 10: | $3,000 |

Royalties received by Egoscue pursuant to this Section shall not be deemed trust funds nor shall Egoscue be required to segregate such funds in any way, but they shall be deemed general funds of Egoscue for all purposes.

12.2    Licensee shall submit to Egoscue with each Monthly Royalty Payment, a true, correct, and complete statement of Licensee's Adjusted Gross Revenue (as defined herein) on forms provided by Egoscue ("Monthly Royalty Statement"), containing all information called for by such forms and certified to be true and correct, by Licensee or such of advisors that prepare the Monthly Royalty Statement.  For the purposes of this Agreement above, the term "Licensee's Adjusted Gross Revenue" shall mean the total gross revenue, including but not limited to earned and unearned revenues as such terms are defined by generally accepted accounting principles, received by Licensee from the operation of the Egoscue Facility, including sales of both merchandise and services, less the sum of all sales taxes, use taxes, gross receipts taxes, and other similar taxes added to the sales price and collected from the customer, and any

{GS9323.DOC:}

14

bona fide refunds, rebates, and discounts.

12.3   Licensee shall maintain its books and records in such manner as to clearly and accurately reflect Licensee's Adjusted Gross Revenue. All such books and records shall be preserved for a period of not less than five (5) years after the close of the fiscal year to which they relate and shall be open at all reasonable times to inspection and verification by Egoscue or any of its representatives. Egoscue shall be entitled at any time to have Licensee's books and records examined or audited at Egoscue's expense, and Licensee shall cooperate fully with the party or parties making such examination or audit on behalf of Egoscue. If any examination or audit is necessitated by Licensee's failure to timely submit statements of adjusted gross revenue or to maintain books and records as required by this Section, then Licensee shall immediately pay to Egoscue the cost of such examination or audit, including reasonable compensation for any time necessarily expended by Egoscue's own employees and reimbursement for expenses necessarily incurred by them. Such payments shall be without prejudice to any right of Egoscue to terminate this Agreement on account of such defaults by Licensee, in accordance with the terms contained herein below.

13.   Assignment & Termination

13.1   Except as set forth in this Section 13, and subject to all the terms and provisions thereof, Licensee shall not make or suffer any assignment ("Assignment") of this Agreement or of any rights or interest herein without the prior written consent of Egoscue, which consent will not be unreasonably withheld or delayed. For all purposes of this Agreement, each of the following shall be deemed to be an Assignment of this Agreement:

13.1.1   Any sale, assignment, transfer, sub-license, or franchise by Licensee of or with respect to this Agreement or any rights or interest herein;

13.1.2   Any pledge, encumbrance, or grant of any security interest herein by Licensee;

13.1.3   Sale at judicial sale or under power of sale, conveyance or retention of collateral in satisfaction of debt, or other procedure to enforce the terms of any pledge, encumbrance, or security interest in this Agreement which results in disposition of Licensee's interest herein;

{GS9323.DOC:}

13.1.4 The passing by operation of law to any other party or parties of Licensee's interest in this Agreement or any part thereof whether by sale of assets, stock, membership interest, or in any other commercially similar equity transfer;

13.1.5 In the event Licensee is a limited liability company, corporation, partnership, or other form of business association, any act, transaction, or event of a nature described in either of Sections 13.1.1 through 13.1.5 which, instead of operating upon this Agreement as such, operates upon or affects any interest in such corporation, partnership, or association and results in any change in the present controlling interest in such corporation (equal or more than 25% of the equity interest), partnership, or association, whether by means of one or a sequence of more than one transaction or event. If Licensee herein is comprised of two or more individuals, Licensee shall be deemed to be a partnership for all purposes of this Section 13, irrespective of whether or not such individuals are designated herein as a partnership.

13.2 Any assignment of this Agreement, other than in accordance with and subject to all the terms and provisions contained in Section 13 shall constitute a breach of this Agreement, shall be subject to the provisions contained herein this Agreement, and shall confer no rights or interest whatsoever under this Agreement upon any other party.

13.3 If Licensee is an individual or a partnership, Licensee may at any time assign and transfer this Agreement to a corporation or limited liability company organized and operated for the sole purpose of conducting the business for which Licensee is franchised and licensed hereunder, subject to the following conditions:

13.3.1 Licensee shall be and remain the owner of one hundred percent (100%) percent of the issued and outstanding capital stock of said corporation or limited liability company, provided that Licensee may cause stock possessing not more than forty-nine (49) percent of the total voting power in said corporation to be issued to Licensee's spouse;

13.3.2 The person or persons designated as Authorized Representatives herein this Agreement shall continue in such capacities and shall continue to comply with all the requirements thereof;

13.3.3 Such assignment and transfer shall be evidenced by a written instrument, in form reasonably satisfactory to Egoscue, in which said corporation expressly

{GS9323.DOC:}

16

assumes all obligations of Licensee hereunder, whether accrued at the time of such assignment or arising thereafter, and agrees to be bound by all the terms and provisions of this Agreement to the same extent and in the same manner as Licensee. A copy of said instrument, executed by both Licensee and said corporation or limited liability company, shall be promptly delivered to Egoscue;

13.3.4   Licensee shall execute and deliver to Egoscue forms of personal guaranty of such corporation's or limited liability company's debts to Egoscue and of any subordination agreement. Further, Licensee shall not be released from but shall remain personally bound and liable to Egoscue notwithstanding said assignment and transfer, with respect to all nonmonetary obligations of Licensee under this Agreement then accrued or thereafter arising, and to evidence such obligations shall execute the personal undertaking set forth at the end of this Agreement, following the signatures of Egoscue and Licensee; or

13.3.5   In the event Licensee proposes to sell the business operated pursuant to this Agreement, whether by sale of the assets thereof, by sale of a controlling interest in Licensee if Licensee is a limited liability company, corporation, partnership, or other form of business association, or by any other means which directly or indirectly transfers said business or control thereof, there shall first be submitted to Egoscue a copy of any bona fide written offer made or received, or if none, a statement in writing of all the terms of the proposed sale and the identity of any proposed purchaser. Egoscue shall have the irrevocable first right and option to purchase the business on the same terms as stated therein, exercisable by notifying Licensee in writing of its election to do so within fourteen (14) days after its receipt of such written offer or statement. If Egoscue does not so notify Licensee within said fourteen (14) day period, then a sale of the business to a third party may be consummated, but only on all the same terms as are set forth in said written offer or statement and to the same party, if any, identified therein, and subject to all the provisions, conditions, and limitations contained herein.  If such a sale is not consummated with the third party within one hundred twenty (120) days after receipt by Egoscue of such written offer or statement, then the proposed sale shall be deemed withdrawn, and all the provisions of this Section shall again become fully applicable, as if such sale had not been proposed. Nothing contained in this Section shall abrogate, impair, or limit the application of any other provision in this Section 13.

{GS9323.DOC:}

17

13.4   In the event Licensee desires or proposes to voluntarily sell, assign, or transfer this Agreement to any party other than a corporation or limited liability company described above, or, if Licensee is a corporation, partnership, or other form of business association, then in the event Licensee and/or the holder or holders of any interest in such corporation, partnership, or association desire or propose to take any action which would constitute or create an assignment of this Agreement within the meaning of Section 13.1, above, Licensee or the holders of such interest, as the case may be, shall first notify Egoscue in writing of such proposed sale, assignment, transfer, or other action, setting forth in detail the nature of the item or interest to be sold, assigned, transferred, or otherwise acted upon, the name and address of the proposed purchaser, assignee, or transferee, or party acquiring any interest, and the consideration, if any, therefore. Subject to prior compliance with the provisions of Section 13.3, above, Egoscue shall consent to the proposed transaction provided that each of the following conditions is fulfilled:

13.4.1   It shall be demonstrated to the reasonable satisfaction of Egoscue that the proposed purchaser, assignee, transferee, or person otherwise to acquire an interest, is of good moral character, and possesses the business experience and capability, credit standing, health, and financial resources necessary to successfully operate the Egoscue Facility in accordance with the terms of this Agreement. If the proposed purchaser, assignee, or transferee is a corporation, partnership, or other business association, the provisions of the preceding sentence shall apply to the individuals who are to own such corporation, partnership, or association. Licensee shall cooperate with Egoscue in making available such information as Egoscue may require to make the above described determinations;

13.4.2   The person who is to be substituted as an Authorized Representative shall have been approved by Egoscue and shall have successfully completed and meet the Minimum Training Requirements then in effect for Egoscue's licensees. Upon consummation of the transaction, this Agreement shall be deemed amended to insert the name of such person in Section 11.4 hereof;

13.4.3   Licensee shall not be in default under any provision of this Agreement, and shall pay in full all amounts owed to Egoscue at or prior to the closing of the transaction;

{GS9323.DOC:}

18

13.4.4  Any sale, assignment, or transfer of this Agreement as such to be made by Licensee shall be evidenced by a written instrument, in form reasonably satisfactory to Egoscue, in which the purchaser, assignee, or transferee expressly assumes all obligations of Licensee hereunder, whether accrued at the time of such assignment or arising thereafter, and agrees to be bound by all the terms and provisions of this Agreement to the same extent and in the same manner as Licensee. A copy of said instrument executed by both Licensee and such purchaser, assignee, or transferee, shall be promptly delivered to Egoscue. If the purchaser, assignee, or transferee is a corporation, limited partnership, or other entity any of the owners of which enjoy limited liability by law, the individual or individuals who own the controlling interest therein shall execute and deliver to Egoscue its then standard forms of personal guaranty and subordination agreement, and shall further execute the personal undertaking set forth at the end of this Agreement following the signatures of Egoscue and Licensee;

13.4.5  In the case of any party or parties who are to acquire an interest in Licensee, the individual or individuals who are to acquire, directly or indirectly, the controlling interest in Licensee shall have executed and delivered to Egoscue personal guaranty and subordination agreements in a form reasonably acceptable to Egoscue, and shall further execute the personal undertaking set forth at the end of this Agreement, following the signatures of Egoscue and Licensee;

13.4.6  Licensee and each of its stockholders, directors, and officers shall have executed and delivered to Egoscue a general release of any and all claims and causes of action against Egoscue, its affiliated corporations, and their respective officers, agents, and employees; and

13.5  In the event Licensee desires or proposes to pledge, encumber, or grant any security interest in this Agreement, or, if Licensee is a corporation, partnership, or other form of business association, then in the event the holder of any interest in such corporation, partnership, or association desires or proposes to pledge, encumber, or grant any security interest therein under circumstances which would constitute or create an assignment of this Agreement within the meaning of Section 13.1, above, Licensee or the holder of such interest, as the case may be, shall first notify Egoscue in writing of such proposed transaction. Egoscue shall not unreasonably withhold its consent to such transaction, subject, however, to the following

{GS9323.DOC:}

19

conditions:

13.5.1 Any consent so granted shall not be deemed a consent to such pledgee, encumbrance, or secured party exercising any rights or prerogatives of Licensee under this Agreement, nor to its exercise of any rights or prerogatives of a holder of an ownership interest in Licensee;

13.5.2 Any consent so granted shall not be deemed a consent to any subsequent disposition described in Section 13.1.3, above, or so much of Section 13.1.5 as refers to Section 13.1.3. Any such subsequent disposition shall be deemed an assignment of this Agreement within the meaning of Section 13.1, above, and shall be subject to the provisions of Section 13.6, below; and

13.5.3 The pledgee, encumbrancer, or secured party shall have executed and delivered to Egoscue an instrument in writing agreeing to be bound by the provisions of this Article.

13.6 In the event any party proposes to acquire the interest of Licensee in this Agreement, if Licensee is an individual, in a transaction described in Section 13.1.3, above, or any such party proposes to acquire the interest of any party or parties having an interest in Licensee, if of a type described in Section 13.1.5, the party proposing to acquire such interest shall notify Egoscue thereof in writing. Subject to prior compliance with the provisions of Section 13.3, above, Egoscue shall consent to the proposed transaction, provided that each of the following conditions is fulfilled:

13.6.1 It shall be demonstrated to the reasonable satisfaction of Egoscue that such party is of good moral character, and possesses the business experience and capability, credit standing, health, and financial resources necessary to successfully operate the Egoscue Facility in accordance with the terms of this Agreement. If such party is a corporation, partnership, or other business association other than a corporation whose stock is publicly traded, the provisions of the preceding sentence shall apply to the individuals who own the same;

13.6.2 The person who is to be substituted as an Authorized Representative shall have been approved by Egoscue and shall have successfully completed the Minimum Training Requirements course(s) then in effect for Egoscue's licensees;

{GS9323.DOC:}

13.6.3   There shall be no existing default in any of the obligations of Licensee under this Agreement, and all amounts owed to Egoscue shall be paid in full at or prior to the consummation of such transaction;

13.6.4   Such party shall have submitted to Egoscue satisfactory evidence that he has acquired and has become entitled to all rights of Licensee hereunder, or to all rights in Licensee belonging to the party or parties whose interests have been acquired, as the case may be. If the interest of Licensee hereunder is to be acquired, the party acquiring such interest shall have executed and delivered to Egoscue a written instrument, in form reasonably satisfactory to Egoscue, by which he expressly assumes all obligations of Licensee hereunder, whether then accrued or thereafter arising, and agrees to be bound by all the terms and provisions of this Agreement to the same extent and in the same manner as Licensee. In addition, if such acquiring party is a corporation other than a corporation whose stock is publicly traded or is a limited partnership or other entity any of whose owners enjoy limited liability by law, the individual or individuals who own the controlling interest therein shall execute and deliver to Egoscue its then standard forms of personal guaranty and subordination agreement, and shall further execute the personal undertaking set forth at the end of this Agreement, following the signatures of Licensee and Egoscue. If an interest in Licensee is to be acquired, the individual or individuals who are to acquire, directly or indirectly, the controlling interest in Licensee shall have executed and delivered to Egoscue said forms of guaranty and subordination agreement and shall have executed the said personal undertaking set forth at the end of this Agreement.

13.7   In the event of the death of Licensee, if Licensee is an individual or if Licensee is a corporation, partnership, or other form of business association, then in the event of the death of any party or parties owning an interest in Licensee, which death results in an assignment of this Agreement within the meaning of Section 13.1, above, Egoscue shall consent to an assignment and transfer of this Agreement to the executor, administrator, or other personal representative of the deceased, and subsequently to the person or persons entitled to distribution from the deceased's estate (or directly to the latter persons if no probate proceedings are instituted with respect to the estate), provided that each of the following conditions is fulfilled with respect to each such assignment and transfer:

13.7.1   it shall be demonstrated to the reasonable satisfaction of Egoscue

{GS9323.DOC:}

that such executor, administrator, personal representative, or distributee is of good moral character, and possesses the business experience and capability, credit standing, health, and financial resources necessary to successfully operate the Egoscue Facility in accordance with the terms of this Agreement. Such executor, administrator, personal representative, or distributee shall cooperate with Egoscue in making available such information as Egoscue may require to make the above-described determinations;

13.7.2 The person who is to be substituted as Authorized Representative under this Agreement shall have been approved by Egoscue and shall have successfully completed the Minimum Training Requirements course(s) then in effect for Egoscue's licensees;

13.7.3 There shall not be an existing default in any of the obligations of Licensee hereunder, and all amounts owed to Egoscue as of the date of death shall be paid in full;

13.7.4   Such executor, administrator, personal representative, or distributee shall have submitted to Egoscue satisfactory evidence that he has succeeded or otherwise become entitled to all rights of Licensee hereunder, or to all rights of the deceased in Licensee, as the case may be. If the deceased was the Licensee, such executor, administrator, personal representative, or distributee shall have executed and delivered to Egoscue a written instrument, in form satisfactory to Egoscue, by which he expressly assumes all obligations of Licensee hereunder, whether accrued at the date of Licensee's death or arising thereafter, and agrees to be bound by all the terms and provisions of this Agreement to the same extent and in the same manner as Licensee. If the deceased was the owner of an interest in Licensee, such executor, administrator, personal representative, or distributee shall execute and deliver to Egoscue its then standard forms of personal guaranty and subordination agreement (limited, in the case of an executor, administrator, or personal representative to his representative capacity), and shall execute the personal undertaking (similarly limited to such representative capacity) set forth at the end of this Agreement, following the signatures of Egoscue and Licensee; and

13.7.5   Any consent by Egoscue to an assignment and transfer of this Agreement or of any interest in Licensee to the executor, administrator, or personal representative of the deceased shall not constitute a consent to any subsequent assignment or

{GS9323.DOC:}

transfer thereof from such executor, administrator, or personal representative to any distributee of the estate. Any consent by Egoscue to such subsequent assignment or transfer shall be subject to fulfillment, with respect to said subsequent assignment or transfer separately and specifically, of all the conditions stated in this Section 13.

13.8 In the event any Authorized Representative ceases to comply with any one or more of the provisions thereof, whether by reason of voluntary action or inaction, disability, death, or other cause (or, if two or more persons are so designated, then in the event all of them cease to comply as aforesaid), other than in connection with a transaction described in Section 13.4, 13.6, or 13.7, above, Egoscue shall consent to the designation by Licensee of another person or persons to be substituted therein, and Section 11.4 hereof shall be amended accordingly, but only if Egoscue in its reasonable discretion finds such person or persons acceptable and he or they shall thereafter successfully complete the Minimum Training Requirements courses then in effect for Egoscue's licensees.

13.9 In the case of any transaction described in either Section 13.2, or 13.4 through 13.7, above, Egoscue shall not be required to give its consent to such transaction unless each condition precedent to such consent requiring action by Licensee or any third party has been fulfilled within ninety (90) days from the date of the event giving rise to the requirement of such consent, provided however, if in any case the person who is to be substituted in Section 11.4 of this Agreement has been unable, within said ninety (90) day period, to complete the required training course(s) solely by reason of such course not having been offered by Egoscue at an earlier date, and if all other conditions to Egoscue's consent have been fulfilled within said ninety (90) day period, then Egoscue shall consent to such transaction conditioned upon successful completion of such training course by such person at the earliest practicable date.

13.10 Nothing contained in this Article shall be deemed to refer to any event referred to in Section 14.6.2 through 14.6.4, below, as causing automatic termination of this Agreement.

13.11 In the event that Egoscue is required, pursuant to Section 13.4, 13.5, 13.6, 13.7, or 13.8, to grant any consent, subject to the conditions set forth in said Sections and in Section 13.9, and if Egoscue fails or refuses to grant such consent, then upon written demand

{GS9323.DOC:}

made by Licensee upon Egoscue at any time within ten (10) days after Licensee's receipt of written refusal by Egoscue to grant such consent, or if no such written refusal is sent by Egoscue, then at any time within ten (10) days after expiration of the period defined in Section 13.9, above, within which the conditions to Egoscue's consent are to be fulfilled or within ten (10) days after earlier written notice of Licensee's binding election to waive the balance of such period and to stand upon the circumstances then existing such dispute shall be submitted to arbitration in accordance with and subject to all the same terms, provisions, and conditions as are set forth in Section 14.3, below, (including all subsections thereof except subsections 14.3.5 and 14.3.6, and except that the time within which such arbitration is to be requested shall be  as provided in this Section, and except further that the issues of fact and law referred to in Section 14.3.2, below,  shall be those the determination of which is necessary to determine whether Egoscue is required, pursuant to and subject to all the conditions of Sections 13.4, 13.5, 13.6, 13.7, or 13.8, and of Section 13.9, above, to grant such consent. If Licensee fails to serve proper written demand for arbitration as set forth in this Section within the time specified herein, Licensee shall be barred from seeking any relief, whether by way of arbitration or by way of action or defense in any court, with respect to any matter or issue which was subject to arbitration pursuant to this Section. If Licensee makes proper and timely written demand for arbitration pursuant to this Section, then Egoscue shall grant the required consent promptly upon termination of the proceedings in favor of Licensee, either by rendition of final decision or award by the arbitrator or by entry of a final and nonappealable order of any court of competent jurisdiction in which lawful review of such decision or award may be sought by Egoscue or Licensee. Egoscue shall not be liable to Licensee for any damage alleged to have accrued to Licensee by reason of the fact that such consent shall have been delayed until termination of the proceedings as aforesaid.

13.12  This Agreement may be assigned by Egoscue or by any hereafter referred to successor, to any corporation which may succeed to the business of Egoscue or of such successor by sale of assets, merger, or consolidation, and may also be assigned by Egoscue or by such successor to the shareholder or shareholders thereof in connection with any distribution of the assets or stock of said corporation.

{GS9323.DOC:}

14.    Default and Termination

14.1    Licensee may terminate this Agreement at any time, at the will of Licensee and without cause, by giving to Egoscue written notice of such termination not less than thirty (30) days prior to the date of termination.

14.2    Egoscue may terminate this Agreement only as follows:

14.2.1  In the event Licensee fails to make any payment of money owed to Egoscue when due, or fails to submit to Egoscue when due any report required by this Agreement and such default is not totally cured within thirty (30) days after Egoscue gives written notice of such default to Licensee, then Egoscue may terminate this Agreement at any time thereafter by giving written notice of such termination to Licensee;

14.2.2  In the event Licensee fails to perform any obligation imposed upon Licensee by this Agreement, and such default is not totally cured within thirty (30) days after Egoscue gives written notice of such default to Licensee, then Egoscue may terminate this Agreement at any time thereafter by giving written notice of such termination to Licensee, provided however, that if the default is of such nature that it is not capable of being totally cured with reasonable diligence by Licensee within said thirty (30) day period, then this Agreement shall not be terminated by Egoscue if Licensee has commenced, immediately upon receipt of such notice, to exercise reasonable diligence to cure such default, Licensee continues to be diligently engaged in curing same upon the expiration of said thirty (30) day period, and the curing thereof is completed as soon thereafter as is reasonably practicable;

14.2.3  In the event Licensee has been given written notice of default by Egoscue two (2) times within any period of twelve (12) consecutive months pursuant to subsections 14.2.1 and/or 14.2.2 above, and in each of such prior instances Licensee has cured the default within the time permitted, then in the event Licensee again fails, within said twelve (12) month period, to perform any obligation referred to in subsection 14.2.1 or 14.2.2, Egoscue may at any time thereafter terminate this Agreement forthwith, without giving prior notice of such default and without affording Licensee any period in which to cure such default, by giving written notice of such termination to Licensee.  Notwithstanding anything to the foregoing contained herein, upon any the occurrence of any default hereunder, cured or not cured, curable

{GS9323.DOC:}

25

or not curable, which does result or which otherwise would result, in the issuance to Licensee by Egoscue of the fifth (5th) notice of default hereunder during the Term, Egoscue may at any time thereafter terminate this Agreement forthwith by giving written notice of such termination to Licensee without affording Licensee any period in which to cure such default;

14.2.4 Egoscue may terminate this Agreement forthwith, by giving written notice to Licensee, on account of any of the following matters:

14.2.4.1    Any willful and material falsification by Licensee of any report, statement, or other written data furnished to Egoscue. Any Royalty Statement or related report submitted shall be conclusively deemed to be materially false if it understates Licensee's Adjusted Gross Revenue by more than ten percent (10%);

14.2.4.2    Any willful and repeated deception of customers by Licensee, relating to the source, nature, or quality of goods sold, or relating to the terms of applicability of any of Egoscue's guaranties;

14.2.4.3    Any attempted or purported assignment of this Agreement not in compliance with Section 13 provided that if Egoscue does not elect to exercise its right to terminate this Agreement pursuant to this subsection, such inaction shall not be deemed to constitute a consent to such assignment nor to confer any rights or interest whatever upon the purported assignee, but this Agreement shall remain binding and in full force and effect as between Egoscue and Licensee herein unless and until Egoscue elects to terminate the same;

14.2.4.4    Any willful and repeated refusal to honor any of the Egoscue's guaranties or any willful and repeated issuance of guaranties other than those permitted and authorized by this Agreement;

14.3.    In the event that Egoscue gives to Licensee any notice of default and/or notice of termination pursuant to Section 14.2, and Licensee disputes the right of Egoscue to terminate this Agreement pursuant to said notice or notices, then upon written demand made by Licensee upon Egoscue at any time prior to or within ten (10) days after notice of termination, such dispute shall be submitted to arbitration in accordance with Expedited Procedures Rules for commercial arbitration of the American Arbitration Association in San Diego, California, and the prevailing party, as determined by the arbitrator(s) shall be entitled to its reasonable attorneys

{GS9323.DOC:}

26

fees and costs.

14.4    The right of Egoscue to terminate this Agreement pursuant to this Section 14, whether or not exercised, shall not be exclusive of any other remedies given Egoscue by this Agreement or by law on account of any default of Licensee hereunder.

14.5    Without intending to limit the foregoing, this Agreement shall terminate immediately upon the occurrence of any of the following events or default (which list of potential defaults under this Agreement is not exhaustive), without the necessity of notice of any kind by Egoscue or Licensee:

14.5.1  Any termination of Licensee's right to possession of the premises, or failure to obtain and maintain video conferencing and internet services for the Egoscue Facility: (i) within thirty (30) days after the Effective Date; or (ii) for any thirty (30) out of any forty-five (45) day period during the Term;

14.5.2  The adjudication of Licensee a bankrupt, or the filing of any petition by or against Licensee, under the federal bankruptcy laws or the laws of any state or territory relating to relief of debtors, for reorganization, arrangement, or other similar relief provided therein, unless such petition filed against Licensee is dismissed within sixty (60) days, or the making by Licensee of a general assignment for the benefit of creditors;

14.5.3  The appointment of any receiver, trustee, or similar officer to take charge of Licensee's business, or any attachment, execution, levy, seizure, or appropriation by any legal process of Licensee's interest in this Agreement, unless the appointment of such officer is vacated or discharged or the effect of such legal process is otherwise released within fifteen (15) days;

14.5.4  If Licensee is a corporation, partnership, or other business association, the occurrence of any act of a type described in Section 14.5.2 or 14.5.3 above, which relates to, involves, or affects the interest of any person owning a controlling interest in Licensee.

14.6  Licensee agrees that neither termination of this Agreement, nor an action at law, nor both, would be an adequate remedy for a breach or default by Licensee, or by any other

{GS9323.DOC:}

persons bound by this Agreement, in the performance of any obligation relating to Egoscue's Indicia, the trade secrets revealed to Licensee in confidence pursuant to this Agreement, or the obligations of Licensee and such other persons, upon and after termination of this Agreement. It is agreed that in the event of any such breach or default, in addition to all other remedies provided elsewhere in this Agreement or by law, Egoscue shall be entitled to relief in equity (including a temporary restraining order, temporary or preliminary injunction, and permanent mandatory or prohibitory injunction) to restrain the continuation of any such breach or default or to compel compliance with such provisions of this Agreement.

14.7   Upon termination of this Agreement, whether by lapse of time, by termination pursuant to any provision of this Article, by mutual consent of the parties, by operation of law, or in any other manner whatsoever, and in the absence of renewal of this Agreement subject to the terms contained herein, Licensee shall cease to be an authorized licensee of the Indicia, Egoscue System, or Egoscue Facility as to any products or services whatsoever, and Licensee and all persons directly or indirectly owning any interest in Licensee or in any way associated with or related to Licensee shall:

14.7.1   Promptly cause Licensee to pay Egoscue all ascertainable sums owing from Licensee to Egoscue, without set-off or other diminution on account of unliquidated claims;

14.7.2   Immediately and permanently discontinue the use of any of Egoscue's Indicia or the Egoscue System, or any marks, names, or indicia which in the opinion of Egoscue are confusingly similar thereto, the Egoscue Facility, or any other materials which may in any way indicate or tend to indicate that Licensee is or was an authorized Licensee of Egoscue or is or was in any way associated with Egoscue;

14.7.3   Immediately and permanently remove, destroy, or obliterate, at Licensee's expense, all signs containing any of the marks, names, indicia, or other things the use of which is prohibited herein;

14.7.4   Promptly destroy or surrender to Egoscue all stationery, letterheads, forms, printed matter, promotional displays, and advertising containing any of the marks, names, indicia, or other things the use of which is prohibited by Section 14.7.2 above;

{GS9323.DOC:}

28

14.7.5 Immediately and permanently discontinue all advertising placed by Licensee as an authorized Licensee of Egoscue or which contains or makes reference to any of the marks, names, Indicia, or other things the use of which is prohibited by Section 14.7.2 above, and will cancel all such advertising already placed or contracted for which would otherwise be published, broadcast, displayed, or disseminated after the date of termination hereof;

14.7.6 Immediately cease using or claiming any right to use any telephone number which Egoscue, as the subscriber therefore, has allowed Licensee to use during the term of this Agreement, and pay all bills incurred for the period during which Licensee used such number or numbers. As to each telephone number for which Licensee may be the subscriber and which shall have been listed or advertised by Licensee at any time within the twenty-four (24) month period prior to termination in any telephone directory or other medium in connection with any of the Marks or any similar designation, Licensee shall immediately transfer and assign any such number to Egoscue or to such person or firm as Egoscue may designate, and shall immediately execute such instruments and take such steps as in the opinion of Egoscue may be necessary or appropriate to transfer and assign each such telephone number, and Licensee further irrevocably appoints the then acting President of Egoscue or its successor as Licensee's duly authorized agent and attorney-in fact to execute all such instruments and take all such steps to transfer and assign each such telephone number;

14.7.7 Immediately and permanently discontinue any use of the Name, the Egoscue System, the Indicia or any word confusingly similar thereto in Licensee's firm name, corporate name, or trade name, and take such steps as may be necessary or appropriate in the opinion of Egoscue to change such names to eliminate therefrom the name "Egoscue" or any word confusingly similar thereto;

14.7.8 Sell to Egoscue, f.o.b., all or such part of inventories of products bearing Egoscue's Marks or Indicia on hand as of the date of termination as Egoscue may request in writing prior to or within thirty (30) days after the date of termination, at the current published prices then being charged by Egoscue to authorized Licensees operating under agreements in form similar to this Agreement, not including any costs of storage or transportation paid by Licensee to bring the goods initially to the Egoscue Facility, minus all costs incurred or to be incurred by Egoscue to restore such goods or packaging thereof to a salable condition, and minus

{GS9323.DOC:}

a reasonable allowance for physical deterioration, obsolescence, or damage to the extent not restored under the preceding clause. Egoscue shall have the right to set off and apply any amounts due to Licensee pursuant to this Section 14.7.8 against any and all other amounts which may be due from Licensee to Egoscue; and

14.7.9   Thereafter refrain from doing anything tending to indicate that Licensee is an authorized Licensee of Egoscue, or is in any way associated with Egoscue.

14.8   Termination of this Agreement under any circumstances shall not abrogate, impair, release, or extinguish any debt, obligation, or liability of Licensee to Egoscue which may have accrued hereunder, including without limitation, any such debt, obligation, or liability which was the cause of termination or arose out of such cause.

14.9   All covenants and agreements of Licensee that by their terms or by reasonable implication are to be performed, in whole or in part, after the termination of this Agreement, shall survive such termination.

14.10   In the event this Agreement is assigned by Licensee and such assignment is consented to by Egoscue subject to the terms and conditions contained herein, this Agreement shall be deemed to have terminated as to the assignor or assignors as of the date of such consent, and such assignor or assignors shall thereupon be bound by all provisions of Section 14.7 above and this Section to the same extent and in the same manner as if this Agreement had been terminated in its entirety as of said date.

14.11   Nothing contained in Section 14.7 shall be deemed to apply to or affect the operation by Licensee or by any other party bound thereby of another Egoscue Facility at any other location pursuant to and in accordance with the provisions of any other valid and outstanding agreement with Egoscue.

15.   Option to Renew

15.1   Subject to the provisions of this Section 15, and pursuant to Section 20025 of the California Business and Professions Code, Licensee is hereby granted an option to extend this Agreement for a successive five (5) year period ("Renewal Term"). This option may be exercised by Licensee at its sole election by sending to Egoscue written notice of its intention to

{GS9323.DOC:}

do so, at least one-hundred eighty (180) days prior to the expiration of the Term as defined in Section 3. Upon exercise of Licensee's option to renew subject to this Section 15, License agrees and acknowledges that the terms and conditions contained herein this Agreement shall continue to operate and be in full force and effect for the duration of the Renewal Term.

15.2  Licensee shall not have the right to exercise the renewal option referred to in Section 15.1 above, unless all amounts to be paid by Licensee to Egoscue are currently paid, and no default under this Agreement exists uncured five (5) days after the Licensee has received written notice of any overdue amounts. Even if no such default exists, Egoscue may revoke said option, and refuse to allow said renewal if in Egoscue's reasonable judgment, during the Term Licensee has repeatedly and unreasonably been in material default of this Agreement.

15.3  As a further condition of renewal, Licensee shall remodel, redecorate, or otherwise update the Egoscue Facility to conform with the then current physical appearance of a new comparably located Egoscue Facility, to the extent that such work can be accomplished within the architectural and design limitations and requirements applying to said Egoscue Facility or at the location thereof. Completion of said work at any time within two (2) years prior to the expiration of this Agreement or actual commencement of such work, or a written agreement to do such work within two (2) years after the said renewal date, shall be deemed to meet this requirement. The requirement for remodeling, redecoration, or updating specified herein must be reasonably construed, taking into account marketing conditions (including past and projected revenues of Licensee), community and local market size, competition, and the effectiveness of the existing design of Licensee's premises. The completion of said work, or the agreement to do such work, is a condition precedent to any renewal of this Agreement. In the event that Licensee agrees to perform said work and then fails to complete the same within two and one-half (2 1/2) years after the renewal date, the license granted hereunder this Agreement shall expire at the end of said two and one-half (2 1/2) year period.

15.4  In the event Egoscue determines that Licensee would not have the right to exercise the renewal option referred to in Section 15.1 above and Egoscue is unwilling to renew the right, license, and option granted by this Agreement, Egoscue shall mail to Licensee, by mail, not less than nine (9) months prior to expiration, a Notice of Probable Intention Not to Renew ("Notice"). Such Notice shall set forth the acts and/or omissions of Licensee that constitute the

{GS9323.DOC:}

31

reasons under this Agreement that Egoscue is unwilling to renew. In the event Egoscue is convinced that Licensee is incapable of fulfilling its obligations under this Agreement, Egoscue shall then send to Licensee a Notice of Refusal to Renew by registered or certified mail at least six (6) months] prior to the expiration of this Agreement. The notice shall state the reasons for the refusal to renew and the effective date of the non-renewal or expiration of this Agreement. To the extent permitted by Section 20025 of the California Business and Professions Code, such Notice of Refusal to Renew shall be deemed to supersede, revoke, and otherwise withdraw the option of Licensee to renew. In the event Egoscue is satisfied that Licensee is able to and will correct any uncured deficiencies claimed in its Notice of Probable Intention Not to Renew, Licensee will be so advised and will be allowed to exercise its option to renew referred to in Section 15.1 above.

16.     <u>Miscellaneous</u>

16.1 <u>Entire Agreement</u> This Agreement contains all of the covenants, conditions and agreement between the parties and shall supersede all prior correspondence, agreements and understandings, both oral and written. Nothing in this agreement or in any related agreement is intended to disclaim the representations made by Franchisor in the Franchise Disclosure Document.

16.2 <u>Severability</u> Should any part of this Agreement, for any reason, be declared invalid, then such portion shall be invalid only to the extent of the prohibition without invalidating or affecting the remaining provisions of the Agreement, or without invalidating or altering said provisions of this Agreement within states or localities where they are not prohibited by law or court decree. All rights and remedies conferred upon Egoscue by this Agreement and by law shall be cumulative of each other, and neither the exercise nor the failure to exercise any such right or remedy shall preclude the exercise of any other such right or remedy.

16.3     <u>Notices</u> All notices, requests, demands and other communications required to or permitted to be given under this Agreement shall be in writing and shall be conclusively deemed to have been duly given (a) when hand delivered to the address set forth below; or (b) when received when sent by facsimile number set forth below (provided, however, that notices

{GS9323.DOC:}

given by facsimile shall not be effective unless either (i) a duplicate copy of such facsimile notice is promptly given by depositing same in a United States post office with first-class postage prepaid and addressed to the parties as set forth below, or (ii) the receiving party delivers a written confirmation of receipt for such notice, either by facsimile or any other method permitted under this section; additionally, any notice given by telex or facsimile shall be deemed received on the next Business Day of such notice if received after 5:00 p.m. (recipient's time) or on a non-Business Day; or (c) three (3) Business Days after the same have been deposited in a United States post office with first-class or certified mail return receipt requested postage prepaid and addressed to the parties as set forth below; or (d) the next Business Day after same have been deposited with a national overnight delivery service reasonably approved by the parties (Federal Express, United Parcel Service and DHL WorldWide Express being deemed approved by the parties), postage prepaid, addressed to the parties as set forth below with next-business-day delivery guaranteed, provided that the sending party receives a confirmation of delivery from the delivery service provider.  For purposes of this Agreement Business Day shall mean any day other than Saturday, Sunday or any State of California or Federal legal holiday:

> To Egoscue:      Egoscue, Inc.
> 12230 El Camino Real, Suite #130
> San Diego, California 92130
> Attn:  Licensing Department
> Facsimile: (858) 792-6038
>
> With Copy to:    Circuit, McKellogg, Kinney & Ross LLP
> 1205 Prospect Street, Suite 400
> La Jolla, California 92037
> Facsimile: (858) 459-0690
> Attn: Richard K. Circuit, Esq.
>
> To Licensee:
>
>
>
> With Copy to:

{GS9323.DOC:}

Each party shall make an ordinary, good faith effort to ensure that it will accept or receive notices that are given in accordance with this section, and that any person to be given notice actually receives such notice. A party may change or supplement the addresses given above, or designate additional addresses, for purposes of this section by giving the other party written notice of the new address in the manner set forth above.

16.4   Counterparts   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

16.5   Time. Time is of the essence of this Agreement.

16.6   Nonwaiver.   Unless otherwise expressly provided herein, no waiver by Seller or Buyer of any provision hereof shall be deemed to have been made unless expressed in writing and signed by such party. No delay or omission in the exercise of any right or remedy accruing to Seller or Buyer upon any breach under this Agreement shall impair such right or remedy or be construed as a waiver of any such breach theretofore or thereafter occurring. The waiver by Seller or Buyer of any breach of any term, covenant or condition herein stated shall not be deemed to be a waiver of any other term, covenant or condition. All rights or remedies afforded to Seller or Buyer hereunder or by law shall be cumulative and not alternative, and the exercise of one right or remedy shall not bar other rights or remedies allowed herein or by law.

16.7   Captions.   Section and/or Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement.

16.8   Successors and Assignees.   All covenants, representations, warranties and agreements of the parties contained herein shall be binding upon and inure to the benefit of their respective heirs, executors, administrators, personal representatives, successors and permitted assignees.

16.9   Attorneys' Fees.   Should either party employ an attorney to enforce or construe any of the provisions hereof or to protect its interest in any manner arising under this

{GS9323.DOC:}

Agreement, or to recover damages for breach of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and court costs.

16.10 <u>Governing Law.</u>   This Agreement has been executed in and shall be governed by the laws of the State of California.

16.11 <u>Modification.</u>  This Agreement may not be modified, amended or changed by the parties, except by a writing specifying the modification, amendment or change, signed by all the parties hereto, or their then successors, if any.

16.12 <u>Exhibits and Schedules.</u>  All exhibits and schedules attached hereto shall be incorporated by reference as if set out herein in full.

16.13 <u>Joint and Several Liability.</u>  If Licensee consists of more than one person, each such person shall be jointly and severally liable.

16.14 <u>Arbitration of Disputes.</u>  Except for disputes arising under Paragraph 14.3, any dispute, controversy or claim arising out of or related to this Agreement, or breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, at San Diego, California, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

16.15 <u>Personal Guaranty.</u> Each of the undersigned, being directly or indirectly beneficially interested in the business to be conducted by Licensee pursuant to the foregoing Agreement, and in order to induce Egoscue to enter into said Agreement and in consideration of its doing so, hereby joins in and agrees to be personally bound by all the terms and provisions of this Agreement, other than those requiring the payment of money by Licensee, to the same extent and in the same manner as Licensee is bound. Nothing herein shall be deemed to abrogate or impair any separate instrument of guaranty or subordination, which any of the undersigned may have heretofore executed or may contemporaneously herewith or hereafter execute, and Licensee shall execute such reasonable assurances of the foregoing contained herein this Section 16.15 as are reasonably requested by counsel to Egoscue, whether contemporaneous with or after Licensee's execution of this Agreement.

{GS9323.DOC:}

35

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

"EGOSCUE"                                          "LICENSEE"

EGOSCUE, INC.,
a California corporation

By: _____          By: _Anu Lawrence_____

Its: _____VP_____             Its: _Owner_____

{GS9323.DOC:}

36

## EXHIBIT A

The Egoscue System is a postural corrective exercise program.  The Egoscue System consists of postural and mechanical evaluations and exercises personalized and sequentially administered with the intended effect of reducing pain and discomfort while increasing anatomical function by returning the client suffering from anatomical dysfunction to an active pain free life, regardless of age or previous circumstance.

The Egoscue System is summarized in the informational synopsis prepared by Egoscue for marketing and advertising purposes, entitled The Egoscue Method, The World Leader In Non-Medical Pain Relief.  You may view this information on our website at: www.egoscue.com.

{GS9323.DOC:}

## EXHIBIT B

The "Marks" include but are not limited to the following as Licensor may update this list from time to time:

Trademarks

Egoscue® (United States and International)
The Egoscue Method® (United States and California)
The Patch®    (word and design)
Epete®
Egoscue Direct®
Egoscuesizes®

Egoscue Front Desk™
E-Cise®
PatchFitness®
Epete Approved Provider® (design)

Logos:



World Wide Web URL: www.egoscue.com

Additional

All Copyrighted print materials, books, videos, manuals etc., as such registrations are on file with the United States Copyright Office and/or any common law copyrights and all customized software used with the Egoscue System, and associated intellectual property rights.

{GS9323.DOC:}

38

# EXHIBIT C

<u>Written Application to Egoscue for License</u>



LICENSE APPLICATION (v. 3-2008)
Egoscue, Inc. (EGOSCUE®)
Corporate Headquarters
12230 El Camino Real, Suite #130
San Diego, CA 92130
Phone: (800) 955-8434

3/15 Ck# 1249
$2500 recd   emld + JE (HH)

EGOSCUE® LICENSE APPLICATION

This information is confidential. The preparation and filing of this application does not obligate you to purchase a license or Egoscue to sell you a license.

1. **Requested Geographical Location**

   Please provide the City and State of intended License:

   City: Denver

   State: Colorado

2. **Type of Legal Structure**

   Please provide the type of legal structure of entity applying for License

   Corporation
   Partnership
   Sole Proprietorship
   LLC
   Other: _____

   What are the names of all owners/shareholders/partners, etc.?

   Names: Anu Lawrence

   Please list the percentage interests of all owners.

   Percentage: 100 %.

3. **Personal Information**

   Name of applicant: Anu Lawrence

   Address: 2600 S. Rock Creek Pkwy. # 5-201

   Phone Number: 720·454·8396

   Date of Birth: 09/21/1978

   Social Security Number: 550·61·6259

   Country of Citizenship: USA / Canada

EGOSCUE® LICENSE APPLICATION

4.   **Please answer the following questions to the best of your ability:**

Have you had any bankruptcies or real estate foreclosures?   Yes   (No)

Have you ever been involved with any lawsuits?   Yes   (No)

Have you ever been convicted of a felony?   Yes   (No)

If any professional licensures, have you ever had any adverse action taken against you?

Yes   (No)   If yes, please give a detailed explanation:

_____

_____

_____

5.   **Please provide current employment information & a copy of a professional resume**

Have you ever owned your own business?   (Yes)   No

If yes, please provide details:

Egoscue Boulder - 6/2011 - present

Guitar Teacher  -  2004 - 2009

6.   **What is your current Education Level (formal)?**

Level: Master's of Arts in Conflict Resolution

7.   **Please provide the following financial information:**

Include attachments of the following to your License Application.
   • Income statement
   • Profit/ Loss
   • Balance sheet to be attached together with proof of cash on hand (current bank statements)
   • Any lending or capital funding agreements (credit lines, etc.)

EGOSCUE® LICENSE APPLICATION

8.    **Proof of Citizenship and/ or Immigrant Status**

Include attachment of Birth Certificate and/ or current official documentation.

9.    **Statement of Interest – Essay**

Please type a one page statement explaining to the best of your ability why you want to license an Egoscue facility.

10.    **Application Profile**

How did you become interested in the Egoscue Licensing opportunity?

Current clinic owner. Coming back for a second helping.

What are, in your opinion, the characteristics of a good business?

#1 Create a "wow" experience for our customers.
↳ go above & beyond & deep client connection
↳ warm & welcoming environment
↳ generating referrals & profitable
↳ representing the Egoscue brand well.

Who will be responsible for the day to day operations of your facility?

Nikki Geiselman will be the primary therapist
& I will be on site half time as the director.
Eventually Nikki will become the director as we grow

EGOSCUE® LICENSE APPLICATION

11.    **Disclosures:**

This is an application to become a licensee of Egoscue, Inc., a California corporation. If there is to be more than one party to this venture, each individual must complete an application. All information must be current to within 30 days of the date of application.

Submission of application is not an offer or acceptance of any offer to become a licensee and there is no obligation by either party in doing so.

Egoscue, Inc. does not guarantee or make promises related to financial performance of the Egoscue System or Egoscue Facility licensed – licensee is requested to make decision based on its own independent research.

**Please read carefully before signing.**

I hereby certify to the best of my knowledge and belief the answers provided above are correct. I authorize Egoscue, Inc. to verify and all data submitted and to make any additional character, credit, and financial investigation it deems advisable or prudent. I understand that any false information or consequential omission contained in this application would be cause for immediate termination of any subsequent agreement reached between Egoscue, Inc. and myself.

_____          $\frac{3}{7}$ / 2016
Signature of Applicant                            Date

_____          _____
Signature of Co-Applicant                         Date

Be advised: this application is not intended as an offer to sell, or the solicitation of an offer to buy, a franchise. It is for informational purposes only. Currently, the following states and countries regulate the offer and sale of franchises: US: California, Hawaii, Illinois, Indiana, Maryland, Michigan, Minnesota, New York, North Dakota, Oregon, Rhode Island, South Dakota, Virginia, Washington and Wisconsin; and International: Australia, Brazil, Canada, France, Indonesia, Malaysia, Mexico, Russia, Spain, and Venezuela.

If you are a resident of one of these states or countries, we will not offer you a franchise unless and until we have complied with applicable pre-sale registration and disclosure requirements in your jurisdiction. Please contact us with any questions or for more information.



**Egoscue Boulder**
**Income Statement**
**For the Year Ending December 31, 2015**

| Year | 2015 |
|---|---|
| **Revenues** | |
| Sales Revenue | $    331,807.72 |
| Interest Income | 15.57 |
| Miscellaneous Revenue | 57.57 |
| COS | -     15,449.01 |
| Returns & Allowances | -      6,520.14 |
| **Total Revenues** | **309,911.71** |
| | |
| **Expenses** | |
| Bank & ATM Fee Expense | 212.00 |
| Business Insurance Expense | 2,137.90 |
| Business Meals & Entertainment Expense | 1,492.29 |
| Computer Equipment Expense | 224.35 |
| Employee Benefits Expense | 327.00 |
| Equipment Expense | 7,868.37 |
| Gas & Auto Expense | 418.23 |
| Health Insurance Expense | 1,744.42 |
| Interest Expense | 354.31 |
| License & Fee Expense | 30,045.00 |
| Marketing & Advertising Expense | 432.46 |
| Merchant Fees Expense | 7,231.97 |
| Office Supply Expense | 4,700.08 |
| Parking & Tolls Expense | 706.50 |
| Payroll Admin Expense | 846.75 |
| Payroll Tax Expense | 9,248.37 |
| Phone & Internet Expense | 3,970.53 |
| Postage & Shipping Expense | 15.13 |
| Professional Service Expense | 5,865.60 |
| Publication/Subscription Expense | 71.90 |
| Rent or Lease Expense | 49,324.86 |
| Salary & Wage - Unreconciled Expense | 1,469.70 |
| Salary & Wage Expense | 109,540.94 |
| Software & Web Hosting Expense | 1,977.72 |

1

**Egoscue Boulder**
**Balance Sheet**
**As of December 31, 2015**

**Assets**

| | | |
|---|---|---:|
| Wells Fargo Checking 1103 | $ | 13,225.43 |
| Wells Fargo Savings 8302 | | 31,512.07 |
| Wells Fargo Savings 8447 | | 5,102.41 |
| Furniture and Equipment | | 2,486.28 |
| Accumulated Depreciation - Furniture and Equipment | - | 2,486.28 |
| Precious Metal Investments | | 13,658.02 |
| Money in transit | | - |
| **Total Assets** | | **63,497.93** |

**Liabilities**

| | | |
|---|---|---:|
| Wells Fargo Credit Card 8032 | | 84.13 |
| Chase Credit Card 5788 | | 5,624.57 |
| Target REDCard Credit Card 6036 | - | 29.50 |
| Payroll Tax Payable | | - |
| Salary & Wage Payable | | - |
| Wells Fargo Dealer Service \| Loan Payable | - | 4,788.32 |
| U.S. Small Business Loan | - | 884.54 |
| Deferred Revenue | | 91,598.20 |
| **Total Liabilities** | | **91,604.54** |

**Equity**

| | | |
|---|---|---:|
| Member Drawing - Anu Lawrence | - | 46,444.34 |
| Member Capital - Anu Lawrence | | 18,337.73 |
| **Total Equity** | - | **28,106.61** |

| | | |
|---|---|---:|
| **Total Liabilities and Equity** | $ | **63,497.93** |



## EXHIBIT D

### Location of Egoscue Facility:

Business name: _Egoscue Denver_

Street: _1660 S. Albien St. # 1007_

City: _Denver - Glendale_

State: _CO_

ZIP: _80022_

Country: _USA_

Telephone: _303) 544.2181_

Alt. phone: _720.454.8396. Amu-cell_

FAX: _____

Web address: _Denver.egoscue.com_

{GS9323.DOC:}

40

## EXHIBIT E

Services:

1.      Postural Therapy;

2.      Individual and Group Functional Strength Training; and

3.      Educational classes and seminars utilizing and focusing on various aspects of the
        Egoscue System

Products:

1.      Blocks and Pillows and all other items (see Exhibit I) used in the Postural Therapy regimen;

2.      All logo merchandise (see Exhibit I);

3.      Selective of the Marks (see Exhibit B);

4.      Computer hardware and software and associated peripherals as required by Licensor

{GS9323.DOC:}

# EXHIBIT F

## Initial Equipment

1 Sony or Polycom View Station camera used for Egoscue Direct video conferencing

Copies of all Egoscue authored books

Brochures

Either foam or inflatable equipment used for therapy (minimum of 5 kits required)

Uniform Shirts bearing the Egoscue logo or identity

Wall Drops

Office Equipment

2 Apple computers with G4 processors (or newer with current operating system)

1 Laser printer

1 FAX Machine

1 Video camera capable of taking digital video

1 Tripod

1 Television with S Video input/output (20" minimum)

1 Copy machine

1 Digital camera – current model in use Olympus 520

1 Software bundle of ePete People TM picture taking solution.

1 Water fountain or dispenser or access to one

{GS9323.DOC:}

42

## EXHIBIT G

### Initial Training Requirements prior to granting of License

1. Licensee will have successful completion of coursework needed to obtain PAS certification, AET certification, TS training and LO training.

2. Licensee is responsible to train all of his or her own staff regarding the Egoscue System and incur any and all expense toward that training. Each new therapist must obtain their own PAS certification, within 1 year of date of hire.

3. Licensee will attend an annual training event (May Days) at Licensee's expense, to stay current with trends and developments consistent with growth of the Egoscue System.

### Minimum Operational Requirements

1. Licensee will keep and use ePete® software application within the Egoscue Facility as primary source of menu writing for all clients. The current ePete® fee for Licensees is $199 per month for a (3) three-year term.

2. Licensee will keep and use daily Egoscue Direct® video conferencing equipment consisting of Polycom or Sony View Station and Television. This system will always be on during hours of operation.

3. Licensee will maintain pricing structure that is consistent throughout the country in which the Egoscue Facility is located.

4. Licensee will only utilize products on the Approved Equipment List for use with its clients. This list may be updated as new equipment is met with approval.

5. Licensee will only sell products within the Egoscue Facility that is on the Approved Product List. This list may be updated as new products meet with approval.

6. Licensee will maintain and use the Sierra™ application to schedule and maintain client information.

7. Licensee will maintain at least one sample item of every available Egoscue product, either for use or display within the Egoscue Facility.

{GS9323.DOC:}

## EXHIBIT H

Advertising may be purchased in the following mediums:

1. Radio
2. Magazines
3. Newspapers
4. Television
5. Trade shows and special events
6. Internet web-based

{GS9323.DOC:}

## EXHIBIT I

Products available for sale within an Egoscue Facility

Price List Attached

## EXHIBIT J

### Authorized Representatives of License

Name: _____

Title: _____

Licensee: _____

By: _____

Its: _____

Business name: _____

Street: _____

City, State, ZIP: _____

Country: _____

Email: _____

Telephone: _____

Alt. phone: _____

FAX: _____

Web address: _____


Name: _____

Title: _____

Licensee: _____

By: _____

Its: _____

Business name: _____

Street: _____

City, State, ZIP: _____

Country: _____

Email: _____

Telephone: _____

Alt. phone: _____

FAX: _____

Web address: _____

{GS9323.DOC:}

## EXHIBIT K

<u>The Egoscue Licensed Clinic Manual</u>