# EXHIBIT F

## MINDBODY SERVICE – FRANCHISEE PARTICIPATION AGREEMENT

This FRANCHISEE PARTICIPATION AGREEMENT ("**Agreement**") is a legal agreement between the MINDBODY entity specified in Section 10 of Article IX below ("**MINDBODY**", "**we**" or "**our**") and the business or individual ("**Franchisee**" or "**you**" or "**your**" as grammatically appropriate) that has been designated by Franchisor (defined below) to receive services from MINDBODY (the "**MINDBODY Services**") pursuant to a Master Terms of Service agreement ("**Master Agreement**") between Franchisor and MINDBODY. MINDBODY and you are sometimes referred to in this Agreement individually as a "**Party**" and collectively as the "**Parties**".

**PLEASE CAREFULLY READ THIS AGREEMENT. YOUR USE OF THE MINDBODY SERVICES IS CONDITIONED UPON YOUR ACCEPTANCE OF THIS AGREEMENT WITHOUT MODIFICATION. IF YOU DO NOT AGREE TO THIS AGREEMENT, YOU MAY NOT ACCESS OR USE THE MINDBODY SERVICES.**

## BACKGROUND

A. The MINDBODY Services include an online software suite that permits service providers in the wellness industry to manage certain functions of their businesses (e.g., online booking, scheduling, payment processing, and marketing tools) and permits individuals and entities to schedule and purchase products and services from those service providers, utilizing the MINDBODY Services platform.

B. Franchisor has identified you as one of its franchisees or affiliates that is authorized to receive the MINDBODY Services.

C. Your eligibility to access and use the MINDBODY Services is expressly conditioned on your acceptance and ongoing compliance with the terms of this Agreement and Franchisor's continuing authorization to deliver the MINDBODY Services to you.

## AGREEMENT

NOW THEREFORE for good and valuable consideration the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I. Definitions

For the purposes of this Agreement, the following capitalized terms shall have the meanings set forth for each of them below:

1. "**Aggregated Data**" means anonymized, aggregated data derived by or through the operation of the MINDBODY Services that is created by or on behalf of MINDBODY and that does not reveal any personally identifying information.
2. "**Cardholder Data**" means credit card numbers, expiration dates, billing addresses, and cardholder names as entered by End Users and/or you. Cardholder Data is a subset of Service Data.
3. "**Confidential Information**" means (a) any software utilized by MINDBODY in the provision of the MINDBODY Services and its respective source code and (b) each Party's business or technical information, including but not limited to the Documentation, information relating to

1

4.     "**Documentation**" means MINDBODY's online user guides, documentation, and help and training materials, as may be updated by MINDBODY from time to time, accessible at www.mindbodyonline.com, and any other materials provided by MINDBODY as part of the MINDDBODY Services.

5.     "**Franchisor**" means the third party that (a) has entered into the Master Terms of Service Agreement with MINDBODY, and (b) has identified you as one of its franchisees or affiliates that is authorized to receive the MINDBODY Services.

6.     "**End User**" means an individual who is authorized by you to use a MINDBODY Service and to whom you (or we upon request) have provided a user identification and password. End Users may include but are not limited to your employees, consultants, contractors and agents.

7.     "**Effective Date**" means the date on which this Agreement becomes effective, as specified in Section 1 of Article VIII below.

8.     "**HIPAA**" means the United States Health Insurance Portability and Accountability Act.

9.     "**MINDBODY Data**" means any data or information collected by MINDBODY independently and without access to, reference to or use of any of Service Data, including, without limitation, any data or information MINDBODY obtains about End Users through the MINDBODY Mobile App (whether the same as Service Data or otherwise).

10.     "**MINDBODY Mobile App**" means the consumer-facing, downloadable mobile app made available by MINDBODY and known as "MINDBODY Mobile App" (and its successor products), which allows consumers to access the MINDBODY Services platform.

11.     "**PCI DSS**" means the requirements of the Payment Card Industry Data Security Standard, as detailed on www.pcisecuritystandards.org.

12.     "**Privacy Policy**" means the MINDBODY Privacy Policy accessible at www.mindbodyonline.com/privacy-policy (or such other URL as specified by MINDBODY), as may be updated by MINDBODY from time to time.

13.     "**Service Data**" means any data, information or content submitted by or for you to the MINDBODY Services or collected and processed by or for you through the MINDBODY Services. Service Data excludes Aggregated Data.

14.     "**Third Party Offerings**" means any third party products, applications, websites, implementations or services, including loyalty programs, that the MINDBODY Services link to, or that interoperate with or are used in conjunction with the MINDBODY Services.

## ARTICLE II. Service Data

1. **Service Data.**
    a. **Cardholder Data.** You are solely responsible for any liability resulting from the mishandling of Cardholder Data by you. You agree that you will comply with the PCI DSS with respect to all credit cards processed via your MINDBODY Services account.
    b. **Other Service Data.** Franchisor owns all Service Data. You acknowledge that your right to access, use, copy, modify and/or delete the Service Data is expressly conditioned on Franchisor's authorization, which may be revoked at its sole discretion. You further acknowledge and agree that Franchisor may access, use, copy, modify and/or delete the Service Data, at its sole discretion. You must obtain permission from Franchisor in writing prior to granting any third party access to the Service Data or providing any copies of the Service Data to any third party. You are solely responsible for resolving any dispute regarding ownership of Service Data between you and any third party, including Franchisor, and agree that MINDBODY shall have no obligation to be involved in any such dispute.

c. **Data Export.** You may download reports containing commonly requested portions of Service Data using the reporting and exporting tools provided as part of the MINDBODY Services, but you may not obtain a complete copy of Service Data via the MINDBODY Services or from MINDBODY's Customer Support without Franchisor's prior written approval. You are responsible for maintaining the security of any of Service Data in your possession.

d. **Unauthorized Disclosure.** If either Party believes that there has been a disclosure of Service Data in a manner not authorized under this Agreement, such Party shall promptly notify the other Party. Additionally, each Party will reasonably assist the other Party in remediating or mitigating any potential damage, including any notification which should be sent to individuals impacted or potentially impacted by such unauthorized disclosure.

2. **MINDBODY Services.**
   a. **Your Obligations.** You are solely responsible for your use of the MINDBODY Services and compliance with this Agreement. Without limiting the foregoing, you shall: (a) have sole responsibility for the accuracy, quality, and legality of the Service Data and your collection and use of the Service Data; (b) prevent unauthorized access to, or use of, the MINDBODY Services, and notify MINDBODY promptly of any such unauthorized access or use; (c) comply with all applicable laws when using the MINDBODY Services, including those related to data privacy and transmission of personal data, (d) have sole responsibility for obtaining, maintaining and paying for any hardware, telecommunications, Internet and other services needed to use the MINDBODY Services, and; (e) comply with the Restrictions on Use set forth in section 2.b. below.
   b. **Restrictions on Use.** You will not: (i) submit any infringing, obscene, defamatory, threatening, or otherwise unlawful or tortious material to the MINDBODY Services, including material that violates privacy rights; (ii) interfere with or disrupt the integrity or performance of the MINDBODY Services or the data contained therein; (iii) attempt to gain access to the MINDBODY Services or related systems or networks in a manner not permitted by this Agreement; (iv) post, transmit or otherwise make available through or in connection with the MINDBODY Services any virus, worm, Trojan horse, Easter egg, time bomb, spyware or other harmful computer code, files, scripts agents or programs; (v) restrict or inhibit any other person or entity from using the MINDBODY Services; (vi) remove any copyright, trademark or other proprietary rights notice from the MINDBODY Services; (vii) frame or mirror any portion of the MINDBODY Services, or otherwise incorporate any portion of the MINDBODY Services into any product or service; (viii) systematically download and store MINDBODY Services content; or (ix) use any robot, spider, site search/retrieval application or other manual or automatic device to retrieve, index, "scrape," "data mine" or otherwise gather MINDBODY Services content, or reproduce or circumvent the navigational structure or presentation of the MINDBODY Services. Notwithstanding subsection (ix) above, and subject to compliance with any instructions posted in the robots.txt file located in the root directory of any Website, MINDBODY grants to the operators of public search engines permission to use spiders to copy materials from the Website for the sole purpose of (and solely to the extent necessary for) creating publicly available, searchable indices of such materials, but not caches or archives of such materials. MINDBODY reserves the right to revoke these permissions at any time and without notice.
   c. **HIPAA.** HIPAA imposes rules to protect certain personal health information or "PHI" as that term is defined under HIPAA. If you are subject to HIPAA, you must notify MINDBODY and enter into a Business Associate Agreement ("**BAA**") in the form provided by MINDBODY, prior to accessing or using the Services. You are solely responsible for determining whether you are subject to HIPAA. You may request a BAA by emailing privacy@mindbodyonline.com.
   d. **Modifications to the Services.** MINDBODY may modify, add, or remove features or

functions to or from the MINDBODY Services, or to provide programming fixes, enhancements, updates and upgrades, to the software supporting delivery of the MINDBODY Services, with or without notice to you.

e. **Personal Information.** The Privacy Policy governs how MINDBODY collects and uses personal information that is submitted through the MINDBODY Services. By accessing or using the MINDBODY Services, you agree to that you have read and accept the Privacy Policy.

f. **Intellectual Property Policy.** MINDBODY respects the intellectual property rights of others and will investigate and respond to notices of alleged infringement that are properly submitted in accordance with our Intellectual Property Policy accessible at https://www.mindbodyonline.com/terms-of-service/copyright (or such other URL as specified by MINDBODY), as may be updated by MINDBODY from time to time.  Any data or information submitted to the MINDBODY Services is subject to our Intellectual Property Policy.

g. **Third Party Offerings**. We or third party providers may make Third Party Offerings available through the MINDBODY Services or otherwise in connection with using the MINDBODY Services. Third Party Offerings are not "MINDBODY Services" under the Agreement and we do not warrant or support Third Party Offerings or other non-MINDBODY products or services, whether or not they are provided by a member of our partner network or otherwise designated as "recommended" or "approved" by MINDBODY. Any procurement by you of a Third Party Offering, and any exchange of data between you and a third party provider, is solely between you and the third party provider. If you enable or install any Third Party Offering for use with the MINDBODY Services, you agree that we may allow the third party provider to access Service Data as required for the interoperation of that Third Party Offering with the MINDBODY Service, and we are not responsible for any disclosure, modification or deletion of Service Data resulting from such access.  We may restrict or disable access to any Third Party Offerings that are made available through the MINDBODY Services without notice and for any reason, including if the provider ceases to make it available. YOUR USE OF THIRD PARTY OFFERINGS IS AT YOUR OWN RISK AND IS SUBJECT TO ANY ADDITIONAL TERMS, CONDITIONS AND POLICIES APPLICABLE TO SUCH THIRD PARTY OFFERINGS (SUCH AS TERMS OF SERVICE OR PRIVACY POLICIES OF THE PROVIDERS OF SUCH THIRD PARTY OFFERINGS).

h. **Payment Services.**   MINDBODY offers the ability to process payments through the MINDBODY Services ("**Payment Services**"). Payment Services are provided by our third party payment processor partners and are deemed to be Third Party Offerings for all purposes under this Agreement. Any procurement by you of Payment Services will be subject to a separate merchant agreement which will be solely between you and the third party payment processor. If you use Payment Services you agree that you and your End Users will comply with the terms and conditions of any applicable merchant agreements and all applicable card network rules, policies, laws and regulations, at all times while using such Payment Services.

## ARTICLE III. Proprietary Rights

1. **MINDBODY Intellectual Property.**   MINDBODY owns all right, title and interest in and to the MINDBODY Services, MINDBODY Data and Aggregated Data.  Subject to the limited rights expressly granted hereunder, MINDBODY reserves all rights, title and interest in and to the MINDBODY Services and Documentation, including all related intellectual property rights.

2. **License Grant.**  MINDBODY hereby grants you a non-exclusive, non-transferable, right to use the MINDBODY Services and Documentation, solely for your internal business purposes during the term of this Agreement, and subject to its terms.

3. **License Restrictions.** You will not: (a) modify, copy or create any derivative works based on the MINDBODY Services; (b) license, sublicense, sell, resell, rent, lease, transfer, assign, distribute, time share, offer in a service bureau, or otherwise make the MINDBODY Services available to any third party, other than End Users as permitted herein; (c) reverse engineer or decompile any portion of the MINDBODY Services, including but not limited to, any software utilized by MINDBODY in the provision of the MINDBODY Services; (d) access or use (or allow a third party to access or use) the MINDBODY Services for competitive analysis or to build any competing products or services; (e) copy any features, functions, integrations, interfaces or graphics of the MINDBODY Services; or (f) otherwise use or exploit the MINDBODY Services in any manner not expressly permitted by this Agreement.

## ARTICLE IV. Confidential Information

A Party will not disclose or use any Confidential Information of the other Party except: (a) as reasonably necessary to perform its obligations or exercise any rights granted pursuant to this Agreement; (b) with the other Party's prior written permission; or (c) to the extent required by law or order of a court or other governmental authority or regulation. Each Party agrees to protect the other Party's Confidential Information in the same manner that it protects its own Confidential Information of like kind, but in no event using less than a commercially reasonable standard of care. Confidential Information will not include any information that: (a) is or becomes generally known to the public without breach of any obligation owed to the disclosing Party; (b) was known to a Party prior to its disclosure by the other Party without breach of any obligation owed to the other Party; (c) was independently developed by a Party without breach of any obligation owed to the other Party; or (d) was or is received from a third party without breach of any obligation owed to the other Party. For clarity, nothing in this Section will restrict MINDBODY with respect to MINDBODY Data or Aggregated Data.

## ARTICLE V. Disclaimer of Warranties

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, MINDBODY MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE MINDBODY SERVICES AND/OR RELATED DOCUMENTATION. MINDBODY DOES NOT WARRANT THAT YOUR USE OF THE MINDBODY SERVICES WILL BE SECURE, TIMELY, ERROR-FREE OR UNINTERRUPTED, OR THAT THE MINDBODY SERVICES ARE OR WILL REMAIN UPDATED, COMPLETE OR CORRECT, OR THAT THE MINDBODY SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE SYSTEMS THAT MAKE THE MINDBODY SERVICES AVAILABLE (INCLUDING WITHOUT LIMITATION THE INTERNET, OTHER TRANSMISSION NETWORKS, AND YOUR LOCAL NETWORK AND EQUIPMENT) WILL BE UNINTERRUPTED OR FREE FROM VIRUSES OR OTHER HARMFUL COMPONENTS. THE MINDBODY SERVICES AND ANY OTHER PRODUCTS AND THIRD PARTY MATERIALS ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS AND SOLELY FOR YOUR USE IN ACCORDANCE WITH THIS AGREEMENT. ALL DISCLAIMERS OF ANY KIND (INCLUDING IN THIS SECTION AND ELSEWHERE IN THIS AGREEMENT) ARE MADE ON BEHALF OF BOTH MINDBODY AND ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AFFILIATES, AGENTS, REPRESENTATIVES,

CONTRACTORS, LICENSORS, SUPPLIERS AND SERVICE PROVIDERS (COLLECTIVELY, THE "**MINDBODY PARTIES**").

### ARTICLE VI. Limitation of Liability

MINDBODY EXPRESSLY DISCLAIMS ANY AND ALL LIABILITY AND WILL NOT BE RESPONSIBLE FOR ANY DAMAGES OR LOSS CAUSED, OR ALLEGED TO BE CAUSED, BY THE TRANSMISSION OF CARDHOLDER DATA PRIOR TO ITS ENCRYPTION AND RECEIPT BY SERVER(S) OWNED OR CONTROLLED BY MINDBODY. THE EXCLUDED DAMAGES WILL INCLUDE, WITHOUT LIMITATION, DAMAGES RESULTING FROM FRAUD, EMBEZZLEMENT, THEFT, IDENTITY THEFT, OR INVASION OF PRIVACY.

TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT WILL THE MINDBODY PARTIES' AGGREGATE LIABILITY, COLLECTIVELY, FOR ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR OTHERWISE, EXCEED THE SUBSCRIPTION FEES ACTUALLY PAID BY FRANCHISOR APPLICABLE TO YOUR MINDBODY SERIVCES ACCOUNT DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE DATE OF THE INCIDENT. ALL LIMITATIONS OF LIABILITY OF ANY KIND (INCLUDING IN THIS SECTION AND ELSEWHERE IN THIS AGREEMENT) APPLY WITH RESPECT TO BOTH MINDBODY AND THE MINDBODY PARTIES.

IN NO EVENT WILL ANY MINDBODY PARTIES HAVE ANY LIABILITY FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, HOWEVER CAUSED, OR FOR ANY LOST PROFITS, LOSS OF USE, DATA OR OPPORTUNITIES, COST OF DATA RECONSTRUCTION, COST OR PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, WHETHER IN CONTRACT, TORT OR OTHERWISE, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THE SERVICES OR THIRD PARTY OFFERINGS, INCLUDING BUT NOT LIMITED TO THE USE OR INABILITY TO USE THE SERVICES, ANY INTERRUPTION, INACCURACY, ERROR OR OMISSION, EVEN IF MINDBODY, ITS LICENSORS OR SUBCONTRACTORS HAVE BEEN PREVIOUSLY ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES.

THE FOREGOING EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO THE EXTENT PROHIBITED BY APPLICABLE LAW.

### ARTICLE VII. Indemnification.

You agree to indemnify, defend, and hold harmless the MINDBODY Parties from and against any and all third party claims alleged or asserted against any of them, and all related charges, damages and expenses (including, but not limited to, reasonable attorneys' fees and costs) arising from or relating to: (a) any actual or alleged breach by you or any End User of any provisions of this Agreement; (b) a claim that Service Data, or that your use of any MINDBODY Service in breach of this Agreement, violates such third party's data privacy rights or intellectual property rights; (c) any dispute between you and any other party, including without limitation Franchisor, regarding ownership of or access to the Service Data; or (d) any negligent or intentional misconduct by you or any End User.

### ARTICLE VIII. Term and Termination

1. **Effective Date**. If you are a first time user of the MINDBODY Services, the Effective Date shall be the date on which you accept this Agreement (e.g., by clicking an "I Accept" button if

|   |   |
|---|---|
| | presented digitally, or by signing and delivering a copy of this Agreement to MINDBODY). If you have been provided with access to and/or use of the MINDBODY Services prior to the date on which this Agreement is presented to you for your review and acceptance, then by accepting this Agreement, you are also agreeing that this Agreement shall apply retroactively such that the Effective Date shall be deemed to be the date on which you first accessed or used the MINDBODY Services. |
| 2. | **Term.** The term of this Agreement shall commence on the Effective Date, and continue until the earlier of: (a) the date on which Franchisor revokes your right to receive the MINDBODY Services, (b) the expiration or termination of the Master Agreement, or (c) the date MINDBODY terminates this Agreement in accordance with Section 3 of this Article. |
| 3. | **Termination by MINDBODY.** MINDBODY may limit, suspend, or terminate your use of the MINDBODY Services (a) upon Franchisor's instruction, (b) if MINDBODY believes that you are materially breaching any provision of this Agreement, or (c) if MINDBODY is required to do so by applicable law. |
| 4. | **Survival.** Article I, Article II, Section 1 of Article III, Section 3 of Article III, Article IV, Article V, Article VI, Article VII, Section 1 of Article VIII, this Section 5 of Article VIII, and Article IX, shall survive any termination of this Agreement. |

## ARTICLE IX. Miscellaneous

|   |   |
|---|---|
| 1. | **Mandatory Informal Dispute Resolution.**  If you have any dispute with MINDBODY arising out of or relating to this Agreement, you agree to notify MINDBODY in writing with a brief, written description of the dispute and your contact information, and MINDBODY will have thirty (30) days from the date of receipt within which to attempt resolve the dispute to your reasonable satisfaction. If the Parties are unable to resolve the dispute through good faith negotiations over such thirty (30) day period under this informal process, either Party may pursue resolution of the dispute in accordance with the arbitration agreement below. |
| 2. | **Governing Law.**  This Agreement will be governed by and interpreted in accordance with the internal laws of the State of California without regard to conflicts of laws principles.  The U.N. Convention on the International Sale of Goods will not apply. |
| 3. | **Arbitration Agreement.** ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND MINDBODY, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, THAT ARE NOT RESOLVED PURSUANT TO SUBSECTION 1 ABOVE WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND MINDBODY AND YOU EACH HEREBY WAIVE THE RIGHT TO TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION. The arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules and Mediation Procedures (currently accessible at www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_004130) as amended by this Agreement.  Any arbitration hearing will be held in San Luis Obispo County, California. The applicable governing law will be as set forth in subsection 1 above (provided that with respect to arbitrability issues, federal arbitration law will govern). The arbitrator's decision will follow the terms of this Agreement and will be final and binding. The arbitrator will have authority to award temporary, interim or permanent injunctive relief or relief providing for specific performance of this Agreement, but only to the extent necessary to provide relief |

|     | |
|-----|--|
|     | warranted by the individual claim before the arbitrator. The award rendered by the arbitrator may be confirmed and enforced in any court having jurisdiction thereof. |
| 4.  | **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to its subject matter, and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter. Without limiting the foregoing, you acknowledge that you are not a party to or intended beneficiary of the Master Agreement and have no rights under that agreement. |
| 5.  | **Waiver and Severability**. No waiver of any provision of this Agreement by MINDBODY will be effective unless in writing and signed by MINDBODY. No waiver by either Party of any breach or default hereunder will be deemed to be a waiver of any preceding or subsequent breach or default. If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, the provision will be modified by the court and interpreted so as best to accomplish the objectives of the original provision to the fullest extent permitted by law, and the remaining provisions of this Agreement will remain in effect. |
| 6.  | **No Assignment.** You may not assign, delegate or transfer this Agreement in whole or in part, without MINDBODY's prior written consent. |
| 7.  | **Relationship.** The Parties are independent contractors. Nothing in this Agreement shall constitute a joint venture, partnership, or agency relationship between MINDBODY and you, or authorize either Party to make any representation on behalf of or in any way to bind the other Party to any obligation of any kind, express or implied, to any third party, or to incur any liability on behalf of the other Party. |
| 8.  | **Amendments.** ☐MINDBODY may, in its sole discretion, supplement or modify this Agreement upon written notice to you. Any new or modified version of this Agreement will be effective upon the earlier of your acceptance of those terms or your continued use of the MINDBODY Services following delivery of notification of such change. If you do not agree to be bound by any such changes to this Agreement, your sole and exclusive remedy is to immediately stop all use of the Services. Any other modifications to this Agreement must be in writing and executed by duly authorized representatives of each of the Parties. |
| 9.  | **Electronic Communications and Signatures.** You agree to the use of electronic communication in order to enter into this Agreement, and to the electronic delivery of notices, policies and records of transactions initiated or completed through the MINDBODY Services. Furthermore, you hereby waive any rights or requirements under any laws or regulations in any jurisdiction that require an original (non-electronic) signature or delivery or retention of non-electronic records, to the extent permitted under applicable law. Except as specified otherwise in this Agreement, any notice from you to MINDBODY under this Agreement shall be sent via registered mail or nationally recognized overnight courier to the following address: MINDBODY, Inc., Attn: Legal Department, 4051 Broad Street, Suite 220, San Luis Obispo, CA 93401. |
| 10. | **MINDBODY Entity.** The table below sets forth the MINDBODY entity you have entered into this Agreement with ("**MINDBODY Entity**") depending on where you are domiciled: |

| If you are domiciled in: | The MINDBODY Entity is: |
|---|---|
| Australia or New Zealand and their respective territories | MINDBODY, Pty Ltd, an Australian proprietary limited company |
| United States and its territories, and all other countries | MINDBODY, Inc., a Delaware corporation |