

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

RECEIVED
Voorhees, NJ
NOV 08 2021

American Arbitration Association

| | |
|---|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. | |
| Name of Respondent: Anu D. Lawrence; Pain Free Posture Therapy LLC | |
| Address: 8778 Wolff Court, Suite 102 | |
| City: Westminster | State: Colorado | Zip Code: 80031 |
| Phone No.: 720-667-4707 | Fax No.: |
| Email Address: info@painfreeposture.net | |
| Name of Representative (if known): Unknown | |
| Name of Firm (if applicable): | |
| Representative's Address: | |
| City: | State: Select... | Zip Code: |
| Phone No.: | Fax No.: |
| Email Address: | |
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. | |
| Brief Description of the Dispute: Please see Exhibit A attached. | |
| Dollar Amount of Claim: $ 852,000 | |
| Other Relief Sought: ☑ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs  ☐ Punitive/Exemplary  ☑ Other: Injunctive relief | |
| Amount enclosed: $ 5,500 In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☑ Standard Fee Schedule | |
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute: The arbitrator selected should have experience, if possible, in business operations which involve franchising. Experience in California law involving misappropriation of trade secrets under the UTSA would also be helpful. | |
| Hearing locale: San Diego, CA (check one) ☐ Requested by Claimant  ☑ Locale provision included in the contract | |
| Estimated time needed for hearings overall: | hours or five (5) days |

*Please visit our website at www.adr.org/support to file this case online.*
*AAA Customer Service can be reached at 800-778-7879.*

Exhibit B



**AMERICAN ARBITRATION ASSOCIATION®**  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | |
|---|---|
| Type of Business: <br> Claimant: Operation of exercise and anatomical function clinics    Respondent: Same | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? <br> No. | |
| Signature (may be signed by a representative): <br> *R. Keith McKellogg* | Date: <br> November 5, 2021 |
| Name of Claimant: Egoscue, Inc., a California corporation | |
| Address (to be used in connection with this case): 7979 Ivanhoe Avenue, Suite 200 | |
| City: La Jolla | State: California    Zip Code: 92037 |
| Phone No.: | Fax No.: |
| Email Address: | |
| Name of Representative: R. Keith McKellogg, Esq. | |
| Name of Firm (if applicable): Circuit, McKellogg, Kinney & Ross LLP | |
| Representative's Address: 7979 Ivanhoe Avenue, Suite 200 | |
| City: La Jolla | State: California    Zip Code: 92037 |
| Phone No.: 858-459-0581 | Fax No.: 858-459-0690 |
| Email Address: kmckellogg@cmkr.com | |
| To begin proceedings, **please file online at www.adr.org/fileonline**. You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee. | |

*Please visit our website at www.adr.org/support to file this case online.*
*AAA Customer Service can be reached at 800-778-7879.*

Exhibit B

# EXHIBIT A

1.  Claimant, Egoscue Inc., a California corporation located in San Diego, California ("Egoscue"), owns the right, title, and interest, through license, to a unique and successful system for the establishment and operation of exercise and anatomical function clinics dedicated to the eradication of body pain and promotion of fitness through motion, offering such goods and services and employing such procedures, processes, and techniques as generally described as the Egoscue System.

2.  Egoscue has expended significant time, effort, and resources in developing, implementing, and marketing the Egoscue Method, products and services offered under and used in connection with Egoscue Method, including certain State, Federal, and common law trade names, trademarks, service marks, logos, and trade dress, and other intellectual property rights and which are Egoscue's sole property.

3.  Egoscue is in the business of licensing the operation of the Egoscue System to others and currently has licensing agreements with over thirty (30) franchisees located throughout the United States.

4.  The dispute between Claimant and Respondent which is the subject matter of this arbitration demand involves multiple breaches of the Egoscue Facility License Agreements between Claimant and Respondent initially at the Egoscue facility in Boulder, Colorado, and subsequently at the Egoscue facility in Denver, Colorado (collectively "Agreements").

5.  On July 1, 2011, Claimant entered into the Egoscue Facility License Agreement with Respondent, Anu Lawrence, for the operation of the Egoscue clinic facility in Boulder, Colorado ("Boulder Agreement"). The Boulder Agreement is attached hereto as **Exhibit A-1** and incorporated by reference herein.

6.  On April 6, 2016, Respondent entered into a separate Egoscue Facility License Agreement for Denver, Colorado ("Denver Agreement"). The Denver Agreement is attached hereto as **Exhibit A-2** and incorporated by reference herein.

7.  This Facility License Agreement expressly provided in paragraph 16.14 for arbitration of disputes arising out of or related to the agreement, or breach thereof, should be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, at San Diego, California, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

8.  Paragraph 16.10 provides that the Agreements had been executed in and shall be governed by the laws of the State of California.

9.  Respondent acknowledged that the Egoscue System and marks (indicia) are the exclusive property of Egoscue. Respondent further acknowledged that licensee would not, either during or after the term of the Agreements, utilize any of Egoscue's indicia, or indicia confusingly similar thereto, except in accordance with the terms of the Agreements (Ex. A-1, ¶ 6; Ex. A-2, ¶ 6).

10. Paragraph 6.1 of Exhibits A-1 and A-2 contains an acknowledgment by Respondent that the indicia in its entirety constitutes trade secrets of Egoscue and that they are revealed to Respondent in confidence solely for the purpose of enabling Respondent to establish and operate the Egoscue facility license under the terms of the Agreements.

11. Paragraph 6.1 further states that such trade secrets include, but are not limited to, processes, essential equipment and accessories, systems, product categories, price list, training manuals, exercises, operating manuals, policy manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins and inventory systems including without limitation to Egoscue license clinic manual.

12. Paragraph 6.1 further states that this proprietary information would not be revealed by Respondent and such proprietary information could not be used by Respondent in connection with any business or venture in which Respondent has a direct or indirect interest for a period of ten (10) years after the term of the Agreements.

13. Respondent was expressly prohibited from revealing, using, or propriating in connection therewith any of the proprietary rights, confidential information, or trade secrets referred to in this section.

14. Paragraph 12.1 of Exhibits A-1 and A-2 required Respondent to pay to Claimant royalties.

15. Paragraph 13.3 of Exhibits A-1 and A-2 provided that Respondent, as an individual, had the right to transfer the Agreements for the operation of the Boulder facility to a corporation or limited liability company organized and operated for the sole purpose of conducting the business for which Respondent was franchised and licensed thereunder.

16. In July, 2021, Respondent closed his Boulder clinic but Claimant allowed Respondent to continue to service the Boulder customers. Respondent owed $5,500 in royalties for the month of September, 2021. However, under the terms of the Denver Agreement, revenue from sales to those customers belonged to Claimant. Claimant paid Respondent $100 for every visit of customers which Respondent fulfilled. Respondent also owed approximately $236,600 in unfulfilled Egoscue therapy sales. This is a conservative estimate based on a fulfillment cost of $100 per session rather than the $130-$180 per session cost that was paid to Respondent by customers.

17. Respondent had continued to operate both the Boulder and Denver clinics until he decided to close the Boulder location.

18. On September 30, 2021, Respondent notified Claimant's employees that Respondent intended to close the Denver clinic ("termination notice"). A copy of Respondent's termination notice dated September 30, 2021 is attached hereto as **Exhibit A-3** and incorporated by reference herein.

19. In the termination notice, Respondent states that he will comply with provisions of the Denver Agreement regarding closure, one of which was to dispose of and/or cease using any Egoscue branded materials or references including on social media platforms.

20. There was no disclosure made by Respondent of the fact that he intended to open a new clinic providing identical services and solicit new customers through use of proprietary information obtained during his tenure as an Egoscue franchisee.

21. On October 1, 2021, Claimant learned that Respondent sent an email using a proprietary customer list to approximately 1,600 Egoscue customers notifying them that Respondent would no longer be operating as an Egoscue franchise but that there would be no change for the customers because he would be providing "the same great service and excellent posture therapy that you have come to expect from us." A copy of this solicitation is attached hereto as **Exhibit A-5** and incorporated by reference herein.

22. In express violation of the Facility License Agreements for Boulder and Denver, Respondent solicited 1,600 customers clearly deceiving them as relating to the source, nature, and quality of the services he was planning to offer after termination of the Facility License Agreements.

23. Having terminated his Egoscue franchise relationships, Respondent was legally prohibited from providing customers with the exercises and services using the Egoscue System and the Egoscue Method and from including exercises, methods, manuals, techniques, software, and other items proprietary to Egoscue after termination of the Facility License Agreement.

24. On October 5, 2021, counsel for Claimant sent a notice of termination ("notice of termination") to Respondent pursuant to section 14.2.4.2 of the Denver Agreement based on the use of the proprietary information consisting of the client list as well as the deception of the customers relating to the nature and quality of the services and goods Respondent intended to offer. A copy of the notice of termination is attached hereto as **Exhibit A-4** and incorporated by reference herein.

25. The notice of termination specifically identified the prohibition under section 6.1 of the Denver Agreement which Respondent had violated. The notice of termination further identified the in addition to violating the terms of the Denver Agreement that the client list was protectable trade secret under the Uniform Trade Secrets Act of California and Colorado.

26. The notice of termination further stated that Respondent had misappropriated trademarks in the termination notice he provided to the 1,600 customers for his competitive brand and that he was currently using trademarks in connection with a competitive brand on Facebook and Instagram.

27. The notice of termination from Claimant's counsel also demanded that Respondent take immediate action in connection with eight (8) specifically identified tasks which Respondent is contractually obligated to perform based on the Denver Agreement.

28.     As of the date of filing and service of this demand for arbitration, none of the requested actions in the notice of termination have been completed, and Respondent continues to employ proprietary information in the development of his new business entity called Pain Free Posture Therapy LLC which was formed on September 2, 2021 and identifies Respondent as the registered agent for service at 7825 Vallejo Street, Denver, Colorado 80221.

29.     Notwithstanding the statements in Respondent's September 30, 2021 termination notice to the effect that he intended to dispose of and/or cease using any Egoscue branded materials or references including on social media channels, Respondent has misappropriated Egoscue trademarks and service marks for his competitive brand.

30.     Based on the multiple breaches of the Denver Agreement identified in Exhibit A-4, the October 5, 2021 notice of termination provided by counsel, Claimant is entitled to injunctive relief as well as set forth in paragraph 14.6 of Exhibit A-2, the Denver Agreement. This paragraph of the Denver Agreement specifically provides that Claimant should be entitled to relief in equity including a temporary restraining order or temporary or preliminary injunction and a permanent mandatory or prohibitory injunction to restrain the continuation of any of the breaches or default or to compel compliance with the provisions of the Denver Agreement. [See Ex. A-2, ¶ 14.6]

31.     Injunctive relief is warranted with respect to the actions required to be taken by Respondent in paragraph 14.7-1 through 14.9.

32.     Also, pursuant to paragraph 16.9 [Ex. A-2], Claimant is entitled to the recovery of reasonable attorney's fees and court costs as the prevailing party in any action to recover damages for breach of the Denver Agreement or to enforce or construe any of the provisions of the Denver Agreement or to protect Claimant's interest in any matter arising under the Denver Agreement.

## BREACH OF CONTRACT

33.     Claimant incorporates by reference the allegations set forth above and, in particular, the allegations related to the Boulder and Denver Agreements attached as Exhibits A-1 and A-2 to this demand.

34.     Claimant has performed all conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the Agreements [Ex. A-1; Ex. A-2].

35.     Respondent has breached the express terms of the Agreements as set forth in Exhibit A-4, the notice of termination dated October 5, 2021 from counsel for Claimant.

36.     Claimant is entitled to money damages for breach of contract pursuant to California *Civil Code* section 3300, which may consist of lost profits, pre-judgment interest, other compensatory damages, and reasonable attorney's fees and court costs pursuant to paragraph 16.9 of Exhibit A-2.

4

{GR0975.DOCX:2}

37. Claimant is further entitled to injunctive relief pursuant to the provisions of paragraph 16.14 to compel Respondent's compliance with each of the demands contained in the notice of termination attached as Exhibit A-4. [See Ex. A-4, pp. 2 & 3, ¶¶1-8] The injunctive relief sought may include temporary, preliminary, or permanent injunctive relief.

## VIOLATIONS OF UNIFORM TRADE SECRETS ACT
[California *Civil Code* 3426-3426.11]

38. Respondent has misappropriated proprietary information including a customer list as that term is defined in California *Civil Code* 3426.1(d) and more specifically misappropriated customer lists which Respondent contractually agreed were trade secrets.

39. Claimant is entitled to injunctive relief for these actual and any threatened misappropriation of Claimant's trade secrets pursuant to the provisions of *Civil Code* 3426.2(a).

40. The arbitrator is statutorily authorized pursuant to *Civil Code* 3426.2(c) to order affirmative acts to protect the Claimant's trade secrets as referenced above.

## SERVICE MARK, TRADEMARK, AND TRADE NAME INFRINGEMENT

41. Claimant is the owner of a number of registered service marks and trademarks which are identified in Claimant's Franchise Disclosure Document under Item 13, pp. 29-31. A copy of pages 29-31 is attached hereto as **Exhibit A-6** and incorporated by reference herein.

42. At the time Respondent executed the Boulder Agreement in 2011, he acknowledged in writing his awareness of the registered marks identified on Exhibit B to the Boulder Agreement.

43. Respondent became familiar with all of the registered marks owned by Claimant during the time he operated the Boulder clinic and the Denver clinic as alleged above.

44. More specifically, paragraph 6.1 of Denver Agreement [Ex. A-2] states that Respondent would not reveal proprietary information in connection with any business or venture in which Respondent had a direct or indirect interest for a period of ten (10) years after the term of the Agreements. Notwithstanding this express contractual prohibition against using Egoscue proprietary information, Respondent nevertheless intentionally used a proprietary customer list with 1,600 Egoscue customers to advertise and solicit new business for his newly-formed, competing business operations.

45. Exhibit A-5 attached to this demand is a copy of the solicitation of existing Egoscue customers used by Respondent in his attempt to take existing Egoscue customers for his new business operation in specific violation of paragraph 6.1 of the Denver Agreement.

46. Exhibit A-5 displays the Egoscue logo which is not only a violation of the Agreements [Ex. A-1; Ex. A-2] but also gives rise to various remedies available under California's model state trademark law, California *Business and Professions Code* 14200, et seq.

47.     Respondent has used a proprietary customer list on at least three occasions to advertise and solicit Egoscue customers for his competing business operation. California *Business and Professions Code* 14402 specifically states that injunctive relief is an available remedy for this type of conduct.

48.     California *Business and Professions Code* 14320(1)(2) provides that an owner of a registered mark may proceed to enjoin the use, display, or sale as may be deemed just and reasonable and shall require the respondent to pay to the owner of the mark (Claimant) up to three times their profits and up to three times all damages suffered by reason of the wrongful manufacture, use, display, or sale.

# EXHIBIT A-1

to
Demand for Arbitration