IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03282-SKC

EGOSCUE, INC., a California corporation,

    Plaintiff,

v.

PAIN FREE POSTURE THERAPY LLC, a Colorado limited liability company,
ANU LAWRENCE, an individual, and,
JOHN DOE 1, whose true name is unknown
JOHN DOE 2, whose true name is unknown
JOHN DOE 3, whose true name is unknown
JOHN DOE 4, whose true name is unknown
JOHN DOE 5, whose true name is unknown

    Defendants.

---

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff, Egoscue, Inc., submits the following reply to Defendants' response in opposition to Plaintiff's motion for preliminary injunction.

INTRODUCTION

Plaintiff's motion for preliminary injunction seeks to preserve the *status quo* pending the completion of arbitration of the parties' dispute in compliance with the Egoscue Facility Franchise Agreement dated April 6, 2016 ("Franchise Agreement").

Plaintiff's counsel and Defendants' counsel have, in compliance with Local Rule 7.1(a), engaged in extensive negotiations over a period of weeks in an attempt to

resolve the entire action; but they have not yet succeeded in this pursuit and it has been time consuming and delayed the decision to file this motion.

Defendants' response to the motion implies that the Plaintiff intends to engage in parallel litigation of the dispute between the parties in both the pending arbitration proceeding and the Federal District Court.  This is obviously not the case given the relief requested by Plaintiff in that it seeks only a preliminary injunction to <u>preserve the *status quo* pending the completion of the arbitration process.</u>

Plaintiff's motion does not seek to litigate the substantive issues in the case in the Federal District Court.  It only seeks to preserve the *status quo* to make an eventual arbitration award meaningful by preventing Defendants from continuing to misappropriate a password-protected customer list to develop their new business while the arbitration is pending.

Defendants' solicitation of the individuals on the customer list are a misappropriation of a trade secret, constitute the use of proprietary information prohibited by the Franchise Agreement, and damages Plaintiff's ability to continue to provide services to the individuals on the customer list.

Further, the argument that the customer list "belongs to Mr. Lawrence" is not supported by the Franchise Agreement or any of the related documentation in the contractual relationship.  Defendant Lawrence is completely aware of the limitations on the use of the customer list based on his prior experience as a franchisee of Plaintiff; but in pursuit of his new business, Defendant Lawrence ignores his responsibilities in that regard.

A. A MAJORITY OF FEDERAL CIRCUITS HAVE HELD THAT THE DISTRICT COURTS HAVE JURISDICTION TO ISSUE A PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO PENDING COMPLETION OF ARBITRATION.

In Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dutton, 844 F.2d 726, 726-28 (10th Cir. 1988), the Court of Appeals held that a preliminary injunction preserving the *status quo* until an arbitration is completed did not violate the Federal Arbitration Act.

The preliminary injunction at issue in the action involved an employee removing client lists from Merrill Lynch files and soliciting her former Merrill Lynch clients for one year after her departure. The defendant resigned from Merrill Lynch; accepted a position with a competing broker; and, immediately following her resignation, began soliciting customers she had served while employed by Merrill Lynch – a fact pattern extremely similar to the one at issue in this litigation.

The Court entered a preliminary injunction enjoining the Defendant from use of her customer list and from soliciting those persons whom she had served while employed by Merrill Lynch.

In addition to this Tenth Circuit opinion, other Circuits have arrived at a similar result with respect to the jurisdiction of the District Courts to issue injunctive relief pending the completion of arbitration. Toyo Tire Holdings of America Inc. v. Continental Tire N.Am., Inc., 609 F.3d 975, 981-82 (9th Cir. 2010).

In PMS Distributing Co. v. Huber and Suhner, A.G., the Court of Appeals recognized that the congressional desire to enforce arbitration agreements would frequently be frustrated if courts were precluded from issuing preliminary injunctive relief to preserve *status quo* pending arbitration and, *ipso facto*, the meaningfulness of the

arbitration process.  PMS Distributing Co. v. Huber & Suhner, A.G., 863 F.2d 639, 641-42 (9th Cir. 1988) (quoting Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986).

Defendants concede that Plaintiff initiated the arbitration proceeding in accordance with the terms of the Franchise Agreement and that it is currently proceeding.

Since the preliminary injunction sought by Plaintiff does not seek to litigate the substantive claims in the arbitration but, rather, only seeks an interim measure consistent with American Arbitration Association Rule 37(c), there is no legal justification for the Defendants' argument.  As referenced in the preliminary injunction moving papers, American Arbitration Association Rule 37(c) specifically states that a request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

Further, as the Defendants referenced in their opposition, the arbitration hearing is scheduled to occur in July, 2022 such that the duration of the preliminary injunction would be very brief and not in effect for the duration of a multi-year case.

B.  THE CLIENT LIST IS A TRADE SECRET NOT ONLY UNDER COLORADO LAW, BUT UNDER THE DEFEND TRADE SECRETS ACT (DTSA) 18 U.S.C. § 1836 ET SEQ. AND CALIFORNIA LAW.

Although Defendants apparently concede that the customer list is a trade secret under Colorado law, as argued in Plaintiff's motion, they argue that California law must apply to the analysis because of the choice of law provision in the Franchise Agreement.

The Ninth Circuit Court of Appeals has jurisdiction in connection with Federal counts of misappropriation of trade secrets under both the Federal Defend Trade Secrets Act (DTSA) and the California Uniform Trade Secrets Act. Please see <u>Inteliclear LLC v. ETC Global Holdings</u>, 978 F.3d 653, 657 (9th Cir. 2020).

The issue in the <u>Inteliclear</u> involves the requirement under the DTSA that the Plaintiff identify its trade secrets with sufficient particularity. In the within action, there is no ambiguity about or need for additional particularity with respect to the 1,600 named customer list misappropriated by Defendants when the franchise was terminated.

The Declaration of Meta Haley in Support of Plaintiff's Motion ("Haley Declaration") [Doc 9-1] also describes the efforts of the Plaintiff to maintain the secrecy of the customer list by the requirement of execution by franchisees of the MindBody Service - Franchise Participation Agreement ("MindBody Agreement") which was executed electronically by Defendant Lawrence on July 2, 2021. [Please see Haley Dec., ¶ 9. See also Declaration of Heather Huffner in Support of Plaintiff's Reply ("Huffner Declaration") filed concurrently with this Reply]

The MindBody Agreement specifically prohibited Defendant Lawrence's use of confidential information related to the names and business opportunities which had been designated by the disclosing customers as confidential and proprietary. [Please see Haley Dec., ¶ 9; Ex. F, pg. 5, Art. IV, Confidential Information]

Plaintiff additionally required the execution of a Confidentiality Agreement as described in paragraph 10 of the Haley Declaration and in Exhibit G to the Haley Declaration.

Defendants also argue that the case of <u>Scott v. Snelling and Snelling Inc</u>. is authority for the proposition that the client list was not the Plaintiff's trade secret.  The facts in <u>Scott</u> are readily distinguishable from the customer list facts in the instant case.  The Court in <u>Scott</u> opined that the clients were <u>businesses</u> and their names were readily discoverable through public sources.  [See <u>Scott</u> at p.1044]  Here, the customer list consists of <u>individuals</u> seeking anatomical therapy who have no connection to each other and cannot be identified as potential customers based on public sources.

Further, the statements from Defendant Lawrence that the client list was cultivated "by his own time, expenditures, network, and marketing" (Lawrence Dec., ¶ 3) ignores the substantial contribution made well before Defendant Lawrence's arrival on the scene to developing customers for the Denver clinic.  Also, the Plaintiff invests hundreds of thousands of dollars yearly in marketing efforts, particularly around events, and shares these leads with franchisees such as former franchisee Lawrence.  [Please see Haley Dec., ¶ 11]

In addition, Defendant Lawrence received leads from Egoscue.com website traffic which had built social media networks/advertising in their local communities using Egoscue trademarks.  [Please see Haley Dec., ¶ 11]

The assertion that Defendant Lawrence is completely responsible for the development of the customer list for the Denver clinic is simply not true.  [Please see Haley Dec., ¶ 11]

Defendant Lawrence relied on the customer list provided by the Plaintiff at the time he began his tenure as the franchisee for the Denver clinic.  He acquired an

existing customer list, and it was expanded during his operation of the franchise through the expenditure of funds by Plaintiff, Egoscue, Inc.  [Please see Haley Dec., ¶ 12]

Plaintiff's references to paragraph 6.1 of the Franchise Agreement are relevant because the express language of the paragraph states that Plaintiff's trade secrets include "but are not limited to . . . " the categories listed in paragraph 6.1.  This paragraph confirms an awareness of the existence of trade secrets in a variety of categories and does not exclude the customer list.

The idea of protecting proprietary information is a theme throughout the Franchise Agreement and is consistent with the desire to protect the confidentiality of the customer list at issue.

Additionally, Defendants' assertion that paragraph 6.1 of the Franchise Agreement "states the clients belong to Mr. Lawrence" is completely untrue. Mr. Lawrence, as a former franchisee, had the license to provide services while he was a franchisee but terminated that right as a result of the termination of the Franchise Agreement.

Defendant Lawrence did not create the customer list.  He augmented the customer list during his tenure as a franchisee, but it was in existence and expanded through the efforts and financial expenditures of Plaintiff, Egoscue, Inc.

C.   PLAINTIFF'S MINDBODY AGREEMENT AND
     <u>CONFIDENTIALITY AGREEMENT ARE ENFORCEABLE</u>.

The electronic execution of the MindBody Service – Franchise Participation Agreement by Defendant Lawrence on July 2, 2021 is referenced in the Haley Declaration at paragraph 9 and the MindBody Agreement is attached as Exhibit F to her

declaration.  See also Huffner Declaration.  The absence of a traditional handwritten signature is common today as a way in which many businesses currently operate using DocuSign and other similar electronic acknowledgements of consent to a contractual arrangement.

The electronic signature method is described in paragraph 9 of the Haley Declaration, and referred to in Exhibit F at paragraph 8, and also in the Huffner Declaration.

D.   DEFENDANTS' CONTINUING SOLICITATION OF CUSTOMERS WHILE THE ARBITRATION IS PENDING CONSTITUTES IRREPARABLE HARM.

Defendants' misappropriation of the 1,600 customers on the password-protected customer list was clearly an attempt to ultimately transfer all of these existing customers to Defendants' new business.

Since existing customers are satisfied with the services being provided by Plaintiff's Egoscue Method, absent the solicitation by Defendant Lawrence for his new business, these customers would otherwise be still available to Plaintiff.  Plaintiff's ability to maintain its existing relationships with customers in Denver has been significantly impaired by the manner in which Defendant Lawrence has solicited the business opportunities from the customer list.  [Please see Haley Dec., ¶¶ 14, 15, 17, 20, 21, 22]

A substantial loss of business absent preliminary injunctive relief shows irreparable injury.  <u>Doran v. Salem, Inc</u>. (1975) 422 U.S. 922, 932.  Loss of current or future market share also may constitute irreparable harm.  <u>Celsis Invitro Inc. v. Cellz Direct Inc</u>., 664 F.3d 930 (2012).

E.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST
SUPPORT A PRELIMINARY INJUNCTION.

Defendants' principal argument related to the balance of equities requirement for issuance of a preliminary injunction is based on the argument that Defendant Lawrence built his client base using his own time, money, and energy and it would be inequitable for Plaintiff to reap the fruits of Defendant Lawrence's labor.  Further, it is alleged that enjoining Defendant Lawrence from his own revenue source would deprive his ability to earn a living and that he might have to close his business and lay off his employees.

These arguments, given the true facts in this matter, are not compelling.  The duration of the preliminary injunction, if granted, would only be through completion of the arbitration proceeding as argued previously in this Reply.  It is difficult to see how Defendant Lawrence would be required to close his business and lay off his employees as a result of a preliminary injunction with a five-month duration.

However, once Defendant Lawrence has succeeded in continuing to solicit the trade secret customer list of Plaintiff's and has, in effect, misappropriated the list to switch the allegiance of the customers to his business, the equities are obviously shifted in favor of Plaintiff.

The argument that there is an erosion of public interest in freedom of contract if the Court were to grant the injunction is hypothetical in the extreme.  As set forth previously in this Reply, there is substantial authority for the issuance of preliminary injunction to preserve the *status quo* pending the completion of arbitration.

F.  THERE IS NO SHOWING BY DEFENDANTS THAT ANY SECURITY BOND WOULD BE REQUIRED TO PROTECT THE DEFENDANTS' INTEREST.

Defendant Lawrence projects a $300,000 security bond requirement based on the loss of approximately one year's worth of revenue from his business. [Please see Lawrence Dec., ¶ 8] However, as has been demonstrated previously, given the short duration of the requested preliminary injunction this period of time is completely unrealistic and unreasonable.

Defendants have speculated that there would be a multi-year litigation of the issues in this District Court which, of course, will not happen if the arbitration is concluded in five months.

In Roda Drilling Co. v. Siegal, 552 F.3d 1203 (10th Cir. 2009), the Court of Appeals determined that the security bond requirement under Federal Rule of Civil Procedure 65(c) was discretionary. The Court found that case law indicates the trial courts have wide discretion under Rule 65(c) in determining whether to require security. Thus, there is no mandatory security requirement, and it is completely within the Court's discretion to determine whether any security is required.

Dated:  March 17, 2022                    Respectfully submitted,

*s/ R. Keith McKellogg*
R. Keith McKellogg, Esq.
Circuit, McKellogg, Kinney & Ross LLP
7979 Ivanhoe Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 459-0581, Ext. 114
E-mail: kmckellogg@cmkr.com
Attorneys for Plaintiff, Egoscue, Inc.